Ming WEI, Petitioner

v.

STATE CIVIL SERVICE COM-
MISSION (Department of
Health), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 29, 2008.
Decided Nov. 25, 2008.

Ming Wei, petitioner, pro se.

Audrey Feinman Miner, Sr. Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Ming Wei (Wei) petitions for review *pro se* from an order of the State Civil Service Commission (Commission) which dismissed his appeal wherein he challenged his removal from employment with the Department of Health (Department) and sustained the Department's action. We affirm.

Wei worked for the Department as an epidemiologist for approximately six and one-half years. In a letter dated September 4, 2007, the Department notified Wei that he was being removed from his position because of insubordination and unsatisfactory work performance. Specifically, the Department maintained that Wei "failed to complete the 2005 backlog data work assignment as directed by July 31, 2007." (Commission Exhibit A.) Wei appealed his removal to the Commission, which conducted a hearing and made the following determinations.

While working for the Department, Wei was the human immunodeficiency virus, acquired immune deficiency syndrome (HIV/AIDS) data manager. The Pennsylvania National Electronic Disease Surveillance System (PANEDSS) is a communicable disease reporting system which is

accessed via the internet. Medical professionals and hospitals transmit data about different communicable diseases to the Department using PANEDSS. The Department uses the data collected to investigate diseases and generate reports.

Prior to December 2005, HIV/AIDS was reported using a communicable report system called HARS which used various software formats.[1] In December 2006, Veronica Urdaneta (Urdaneta), Wei's supervisor, assigned Wei the task of converting the HARS HIV/AIDS data files into one software format, SAS.[2] The task was solely Wei's responsibility and Wei was instructed to convert the data from 2005 only. Urdaneta did not initially give Wei a deadline for completion.

Once the 2005 HARS HIV/AIDS data files were converted, the Department could then assess whether data was missing, duplicated or invalid. From that point, the Department could then assess whether it was worthwhile to input the data to PANEDSS and if so, whether an outside contractor should perform the task.

Wei asked for a template of the data he was to convert, which reflected that data that would later be captured by PANEDSS. The Bureau of Information Technology (BIT) provided Wei a draft layout in January 2007 and Wei was informed that because PANEDSS was in its early stages, the layout could change.[3] Wei was repeatedly told not to test the draft layout

and that the layout would probably change. Wei was reinstructed that his assignment was to convert the HARS HIV/AIDS data files.

On February 6, 2007, Wei sent an email to Bob Giallo at BIT, wherein he sent a sample of 158 real potential cases which he wanted Giallo to test for consistency with the draft layout. In a response, Giallo informed Wei that he was getting too deep into the process and reminded him that the layout would probably change. Urdaneta also testified that she never instructed Wei to test the draft layout and, further that she instructed Wei to stop additional communications regarding the draft layout until she spoke with him.

In a letter dated April 4, 2007, Wei received a written reprimand for insubordination for failing to attend a monthly HIV/AIDS data management and analysis meeting as instructed.

On April 9, 2007, Urdaneta informed Wei that enough time had passed for completion of the project. She then told him to complete the project and that he was to attach a report with his findings by April 30, 2007. She also informed Wei that if he didn't know how to complete the project, he was to let Urdaneta know. Wei responded that it was a large project to complete and that he would need a clerk to help. Urdaneta responded that Wei was supposed to have been working on the HARS HIV/AIDS project when it was first

1. The full name of HARS is not provided in the record. However, HARS is described as the system which collected and maintained HIV/AIDS data. (Record at p. 40.)

2. The full name of SAS is also not provided in the record. However, SAS is described as statistical software that permits you to write a code into the software and then bring all of the different formats together and unify them into one single format. (Record at p. 42–43.)

3. Prior to being given the assignment in January of 2007, Wei's access to PANEDSS was suspended in February, 2006 because of his failure to comply with a request that he stop sending emails portraying PANEDSS as a system full of errors. In July of 2006, Urdaneta restored Wei's access to PANEDSS on the condition that any problems he had with PANEDSS be addressed to her or Wei's supervisor. Wei was not required to access PANEDSS to perform the data conversion assignment.

assigned to him and that she would look into providing a clerk. Wei further responded that he should not be working on the project because it was BIT's responsibility. Urdaneta then informed Wei that it was his, not BIT's responsibility, and that he had a due date by which to complete it.

Wei did not complete the HARS HIV/AIDS assignment by April 30, 2007 and a pre-disciplinary conference was then conducted. At the hearing, Wei complained that the assignment was not part of his job duties but that of BIT, that it was a lot of work, that it was in draft, not final form, and that he was refusing to do it. On May 23, 2007, Wei received a written reprimand for unsatisfactory work performance, specifically noting his failure to complete the HARS HIV/AIDS project. Wei was then given an additional six weeks to complete the project.

In June 2007, Urdaneta transferred some of Wei's job responsibilities to other staff members so that he could give priority to the HARS HIV/AIDS data project. Wei informed Urdaneta that he had transferred many of the files into the SAS format. Urdaneta asked Wei several times to show her his progress on the data conversion assignment, but he never did. In June/July of 2007, Wei was asked to train other staff members to help gather information, but Wei scheduled only one training session. Urdaneta again transferred some of Wei's responsibilities to a colleague.

On July 2, 2007, Wei notified Urdaneta in an email that he was enclosing 424,598 records that he had transferred into SAS format.[4] The records, however, were not enclosed. In a second email, Wei informed Urdaneta that the files were too large. Urdaneta then went to Wei's office to see the converted file of records. Wei responded that he did not have the converted files and he could not print it out because it was too long. On July 3, 2007, Wei was given a direct order to complete the conversion by July 31, 2007.

On July 4, 2007, Wei asked Urdaneta for permission to take a SAS programming course. Urdaneta denied the request because the training was more for BIT personnel and was unrelated to Wei's data conversion assignment.

On July 10, 2007, Wei received a five-day suspension for unsatisfactory work performance for his failure to meet the six-week deadline previously imposed for completion of the conversion, for his inappropriate behavior and for his insubordination.

Wei never completed the assignment to convert the 2005 HARS HIV/AIDS data files into a single software format. On August 24, 2007, a disciplinary conference was held at which Wei admitted that he did not complete the conversion assignment by the July 31, 2007 deadline. Wei was thereafter discharged from his employment on September 4, 2007, due to insubordination and unsatisfactory work performance.

■ Based on the above, the Commission determined that the Department presented evidence sufficient to establish just cause for Wei's removal under Section 807 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.807 and, further that Wei failed to present evidence establishing discrimination under the Act. As such, the Commission dismissed Wei's appeal challenging his removal from employment with the De-

---

4. Also, on July 2, 2007, Wei received a written reprimand for inappropriate behavior relating to a letter he sent his supervisor regarding sick leave.

partment. This appeal followed.[5]

■ Initially, Wei claims that the Commission erred in failing to provide him a Chinese interpreter and that the Commission was obligated to provide him with one in accordance with the Court Interpreters' Act, 28 U.S.C. § 1827.[6] The Court Interpreters' Act requires "the use of certified and otherwise qualified interpreters in judicial proceedings instituted by the United Sates." 28 U.S.C. § 1827(a). The term judicial proceedings instituted by the United States refers to the "lawful authority and jurisdiction of United States district court." 28 U.S.C. § 1827(j). By its terms, 28 U.S.C. § 1827, does not apply to the Commission, as it is only applicable to United States district courts.

■ Wei also claims that the Commission erred in limiting testimony as to how HIV/AIDS data was processed prior to 2005. The Commission has the authority to rule on the admissibility of evidence and "shall otherwise control the reception of evidence so as to confine it to the issues in the proceeding." 1 Pa.Code § 35.162. Evidence is considered relevant and probative if it tends to establish a fact material to the case or tends to make facts at issue more or less probative. *Commonwealth v. Gibson*, 264 Pa.Super. 548, 400 A.2d 221, 223 (1978). We agree with the Commission that Wei was given an assignment in 2006 to convert the HARS HIV/AIDS 2005 data. How these files were previously processed was immaterial to the issue of whether Wei completed a prioritized assignment given to him by his supervisors.

As such, we find no error in the Commission's decision to limit testimony.

Wei also takes issue with a number of the Commission's findings. Specifically, he claims that contrary to the Commission's findings, he was not the only one assigned to the HARS HIV/AIDS conversion project, that he did forward progress reports to Urdaneta, and that he did need special training to complete the project. According to the testimony of Urdaneta, which was credited by the Commission, she repeatedly informed Wei that it was his responsibility and no one else's to complete the project and that despite her requests, Wei did not provide her with progress reports. Based on Urdaneta's testimony, the Commission also concluded that Wei did not need additional training to complete the project as he already possessed all the skills necessary to complete the project. Although Wei's testimony differed from that of Urdaneta, it is the Commission which determines credibility. *State Correctional Institution at Graterford v. Jordan*, 95 Pa.Cmwlth. 475, 505 A.2d 339 (1986).

■■ Next, Wei claims that the Department did not meet its burden of proving just cause for his removal under the Act. In *Galant v. Department of Environmental Resources*, 534 Pa. 17, 20 n. 2, 626 A.2d 496, 498, n. 2 (1993), the Court stated that just cause "must be merit-related and the criteria must touch upon [the employee's] competency and ability in some rational and logical manner." "What constitutes ample just cause for removal must necessarily be largely a matter of discre-

---

**5.** This court's review is limited to determining whether constitutional rights have been violated, an error of law committed, and whether necessary findings are supported by substantial evidence. *Thompson v. State Civil Service Commission (Beaver County Area Agency on Aging)*, 863 A.2d 180 (Pa.Cmwlth.

2004), *petition for allowance of appeal denied*, 583 Pa. 685, 877 A.2d 463 (2005).

**6.** Wei does not inform this court of whether he asked the Commission for an interpreter and, if so, where in the Commission transcript such request was made.

tion on the part of the head of the department. To be sufficient, however, the cause, should be personal to the employ[ee] and such as to render him unfit for the position he occupies...." *Woods v. State Civil Service Commission (New Castle Youth Development Center )*, 590 Pa. 337, 345, 912 A.2d 803, 809 (2006). The Commission is the sole fact finder and has exclusive authority to assess credibility and resolve evidentiary conflicts. *Hetman v. State Civil Service Commission (Berks County Children and Youth )*, 714 A.2d 532 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* 558 Pa. 634, 737 A.2d 1227 (1999).

Here, Wei was terminated for not completing the HARS HIV/AIDS assignment by July 31, 2007. While the Department maintains that Wei was given ample resources and time within which to complete the assignment, and the Commission found as such, Wei claims that he did not receive help, training, or enough time to complete the project. Specifically, Wei claims that it was not his responsibility to convert the 2005 HARS HIV/AIDS data files. However, as found by the Commission, a series of emails sent to Wei by Urdaneta reveals that Wei was repeatedly informed that he was to complete the assignment and that it was his responsibility and not the responsibility of PANEDSS and BIT. The e-mails evidence that for six months Wei was insubordinate in refusing to accept responsibility for the assignment that was his to complete.

That Wei was given enough time and assistance to complete the assignment is also supported by the testimony of Urdaneta. Specifically, Urdaneta reassigned some of Wei's job duties in June of 2007, so that he could concentrate on the project. She also asked Wei to train other staff members to assist him, but Wei was uncooperative and only held one such training session. Wei was repeatedly given extensions within which to complete the assignment, yet failed to do so. Even when asked by Urdaneta whether he did not know how to complete the project, Wei never stated that he was incapable of completing it. Rather, his excuses for not completing the project centered on his contention that the project was not his responsibility and that it was large. Further, during the six month period in which Wei had the project, Wei did not show any significant progress on the assignment, even after disciplinary action was taken due to his lack of progress.

As stated by the Commission, Wei's insubordination and unsatisfactory work performance provided just cause for his removal inasmuch as it had a direct impact on his job performance. As the HIV/AIDS data manager, Wei was charged with collecting and reporting HIV/AIDS data accurately. Since Wei failed to complete or make progress on the project given to him, even though he was capable of doing such project, was offered help on the project, was relieved of certain duties in order to complete the project and had been reprimanded for not having completed the project, the Commission properly found that the Department had just cause for Wei's removal.

 Next, Wei claims that the Commission erred in rejecting his discrimination claim. In accordance with Section 905.1 of the Act, added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. § 741.905a, "[n]o officer or employee of the Commonwealth shall discriminate against any person ... because of race, national origin or other non-merit factors." An employee claiming discrimination in a personnel action has the burden of presenting evidence to support such a charge. *State Correctional Institution at Pittsburgh, Department of Corrections v.*

*Weaver*, 146 Pa.Cmwlth. 381, 606 A.2d 547, *petition for allowance of appeal denied*, 531 Pa. 648, 612 A.2d 986 (1992). In doing so, an employee claiming disparate treatment must demonstrate that he was treated differently than other employees similarly situated. *Bruggeman v. State Civil Service Commission*, 769 A.2d 549 (Pa. Cmwlth.2001). When the initial burden of proof is met, the burden of production shifts to the employer to advance a legitimate non-discriminatory reason for removal. *Commonwealth of Pennsylvania, Department of Health v. Nwogwugwu*, 141 Pa.Cmwlth. 33, 594 A.2d 847 (1991). Then, the presumption of a prima facie case is rebutted and the employee must then demonstrate by a preponderance of the evidence that the employer's articulated reason was merely a pretext for discrimination and not the actual motivation behind its decision. *Id.*

Here, Wei maintains that his removal was motivated by his national origin, his criticism of PANEDSS and his health condition. Wei argues that he was singled out to perform the HARS HIV/AIDS assignment and that no one else was given such a large task nor was anyone else fired for not completing the task. The Commission credited the testimony of Urdaneta that Wei was given the assignment because other employees in the HIV/AIDS section lacked the necessary expertise. Thus, Wei's claim that no one else was fired for not having completed the task is of no moment, as he was the only one assigned to the task.

■ Wei also claims that the suspension of his PANEDSS password was discriminatory. Removal of Wei's password did not affect Wei's employment status, nor did it prohibit his ability to complete the HARS HIV/AIDS assignment because he did not need the password to complete the assignment.

■ Wei's password was suspended because of his criticism of PANEDSS. Wei was informed by Urdaneta that his password would be restored once he confined his criticism of PANEDSS only to her. Wei likens his complaints about PANEDSS to that of a whistleblower complaint, implying that the Department retaliated against him because of his complaints. The Whistleblower Law, Act of December 12, 1986, P.L. 1559, 43 P.S. §§ 1421–1428, provides that an employer may not discharge an employee because the employee makes a good faith report of wrongdoing or waste, 43 P.S. § 1423(a). To make out a prima facie case of retaliatory discrimination, the plaintiff must show by facts or surrounding circumstances that the report of wrongdoing led to the plaintiff's dismissal, such that there was specific direction or information received not to file the report or that there would be adverse consequences if the report was filed. *Gray v. Hafer*, 168 Pa.Cmwlth. 613, 651 A.2d 221 (1994). Here, there is no connection between Wei's complaints and any wrongdoing or waste.

■ As to Wei's health condition, he claims that the Department discriminated against him by refusing to give him time off under the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654. The record does not reflect that Wei requested and was thereafter denied leave under the Family and Medical Leave Act. Instead, Wei requested annual leave. According to Urdaneta, whose testimony was credited by the Commission, she had the authority to deny such a request for operational reasons and such a request was denied so that Wei could complete the assignment given to him.

Finally, we address Wei's argument that witnesses on behalf of the Department provided false testimony at the Commis-

sion's hearing.[7] Specifically, Wei claims that Urdaneta provided testimony at the Commission hearing which was inconsistent with that provided before the Unemployment Compensation Board of Review (Board). The testimony focuses on the 424,000 records that Wei was to convert.

At the Board hearing the following exchange occurred:

ER And then, also in the documents, he says that the final format had not arrived from PA NEDSS, that those exercises should not be considered valid. Does this have any relevance to the case?

EW1 No. Really, no because I never, I never received the 424,000 records that he mentioned here. I never saw those documents or asked him for that information. He never gave it to us. (Board hearing p. 60.)

At the Commission hearing, the following occurred:

Q. Okay. Were the 424,598 records enclosed as the e-mail stated they were?

A. No, they were not.

Q. So what did you do?

A. As soon as I got the e-mail, I got up and walked to Dr. Wei's office and went there and asked him to show me, where are they? And then he opened the computer and he showed me just different files and different formats that he had. And I said, where's the unified file that you were supposed to have? And he said, well, I don't have that. And I said, okay, then print me a copy. He said it was too many pages. So I said, where's the information that you put in your e-mail? And he wasn't able to show me

that information. (Commission hearing p. 61.)

Contrary to Wei's assertion, in both of the proceedings, Urdaneta consistently testified that she was not shown the 424,000 records.[8]

In the remainder of Wei's brief, he continues to complain that the HARS HIV/ AIDS conversion was not his responsibility, that more individuals should have been assigned to the task, and that the finding that he did not show data regarding his progression on the assigned task, is false. These issues have been previously addressed and we again note that the Commission is the determiner of credibility.

In accordance with the above, the decision of the Commission is affirmed.

### *ORDER*

Now, November 25, 2008, the Order of the State Civil Service Commission, in the above-captioned matter, is affirmed.

---

**7.** As a result of a motion filed by Wei, this court issued an order on September 30, 2008, granting Wei's motion to file a brief regarding false testimonies and also provided the Department with an opportunity to file a response thereto.

**8.** Wei also takes issue with testimony presented by Ms. Burnhauser. A review of the testimony before the Board and Commission reveal that Ms. Burnhauser consistently testified that she never saw any tangible evidence that Wei had completed the assignment.