# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ming Wei,                                           :
                 Petitioner        :
                              :   No. 1902 C.D. 2016
            v.                                   :
                              :   Submitted: May 5, 2017
State Civil Service Commission          :
(Department of Health),                 :
                Respondent        :


***OPINION NOT REPORTED***

MEMORANDUM OPINION
PER CURIAM                                          FILED: September 1, 2017


        Ming Wei (Wei) petitions for review of the November 18, 2016 order of the Pennsylvania State Civil Service Commission (Commission) denying Wei's motion to reopen his case and determining that his alleged newly discovered evidence was available to him when he filed a previous motion to reopen on December 17, 2014, based upon alleged newly discovered evidence.


## Background and Procedural History

        This matter is one of three related appeals filed by Wei, *pro se*, from orders of the Commission initially dismissing Wei's appeal challenging his termination and twice denying his two subsequent motions to reopen the case based on alleged newly discovered evidence. Wei appealed the Commission's first two orders to this Court and each time we affirmed. Wei now seeks review of the November 18, 2016 order of the Commission denying his second motion to reopen

and determining that none of Wei's alleged newly discovered evidence was unavailable to him at the time he filed his first motion to reopen.

This Court's decisions in those two prior appeals, *Wei v. State Civil Service Commission (Department of Health)*, 961 A.2d 254 (Pa. Cmwlth. 2008) (*Wei I*), and *Wei v. State Civil Service Commission (Department of Health)* (Pa. Cmwlth. No. 263 C.D. 2015, filed September 18, 2015) (*Wei II*), establish the following history of this dispute.

Wei worked as an epidemiologist and was the data manager for the Pennsylvania Department of Health's (Department) human immunodeficiency virus and acquired immune deficiency syndrome (HIV/AIDS) epidemiology team. Wei was responsible for transferring data to different formats. On May 16, 2007, Wei was given a direct order to complete the 2005 backlog data assignment within six weeks. By letter dated September 4, 2007, Wei was discharged from employment, effective September 7, 2007, for insubordination and unsatisfactory work performance.[1] The termination letter stated that Wei failed to complete the backlog data format conversion assignment given to him on July 21, 2007. *Wei II*, slip op. at 2.

Wei appealed his discharge to the Commission which, following a hearing, dismissed the appeal by adjudication and order dated March 7, 2008. Specifically, the Commission stated as follows:

---

[1] Wei had previously received written reprimands on April 4, 2007, for failing to attend a pre-scheduled team meeting without notifying his supervisor; May 23, 2007, for failing to complete his work on time; and July 2, 2007, for sending an inappropriate e-mail to his supervisor alleging an abusive work environment that caused him to have health problems. Wei had previously been suspended from July 23-27, 2007, for failure to complete the 2005 backlog data task, inappropriate behavior, and insubordination. *Wei II*, slip op. at 2.

The [C]omission finds that the appointing authority's evidence established that by failing to complete the HARS[2] HIV/AIDS data conversion assignment, appellant exhibited unsatisfactory work performance and insubordination. [Employer's witnesses] credibly testified that this assignment was appellant's responsibility, and his alone. [Employer's witness'] credible testimony, and the evidence offered by the April 9, 2007 e-mails, shows that appellant was insubordinate in refusing for six months to accept this responsibility and complete the assignment. We are not persuaded by appellant's arguments that his failure to complete his assignment was not his fault, but rather, the fault of the appointing authority. [Employer's witness] offered ample, credible, evidence that she helped appellant with the assignment by transferring some of his job duties to other staff members as he requested, thereby lightening his workload. We also accept as credible [Employer's witness'] testimony that she did not stop appellant from training other people to help him with his duties, nor did she deny appellant any training he may have needed to complete the assignment. The Commission is not persuaded by appellant's argument that he needed more time and more help to complete the assignment, especially in view of the fact that he did not show any significant progress on it for six months, and we accept [Employer's witness'] testimony that he did not show her the 424,498 records that he claimed he converted. The picture that emerges from the testimony is one of consistent insubordination and unsatisfactory work performance in that despite the appointing authority's help, and a written reprimand and a suspension, appellant neither completed nor made any substantial progress toward completing the assignment by the July 31, 2007 deadline.

Appellant's insubordination and unsatisfactory work performance provided just cause for his removal because it had a direct impact on his job performance, and directly involves his competence and ability as an Epidemiologist.

---

[2] The HARS acronym appears refer to "HIV/AIDS Reporting System." (R.R. at Doc. B, p. 14.)

*Wei II*, slip op. at 2-3 (quoting Commission's adjudication and order at 24-25).

In *Wei I*, this Court affirmed the Commission's denial of Wei's appeal challenging his termination. Specifically, we held that the Commission did not err in: determining that Wei was not entitled to an interpreter at the Commission's hearing pursuant to 28 U.S.C. §1827; limiting the testimony to only questions and responses concerning the data conversion process to be used by Wei during the time period that he was assigned his tasks that he did not successfully complete; crediting the testimony of the Department's witnesses; determining that Wei was given ample time and resources to complete his tasks; determining that Wei's removal was not discriminatory; and concluding that the Department's witnesses offered consistent testimony during the Commission's hearing and the hearing before the Unemployment Compensation Board of Review. *Wei I*, 961 A.2d at 255-61.

On December 17, 2014,[3] Wei filed a motion with the Commission to reopen the case based on alleged newly discovered evidence. By order dated January

---

[3] Wei filed suit in United States District Court for the Middle District of Pennsylvania on April 13, 2011, alleging violations of Title VII for retaliation and national origin/racial harassment and discrimination; the Civil Rights Act of 1964, 42 U.S.C. §§1983, 1985, for defamation and intentional infliction of emotional distress; the Pennsylvania Human Relations Act (PHRA), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951 – 963, based on discipline during his employment and termination; and the United States Constitution for deprivation of property/due process. On June 6, 2012, the district court dismissed his counts under 42 U.S.C. §1983 for intentional infliction of emotional distress, discipline, and termination; his PHRA counts; and his deprivation of property/due process claim. *Wei v. Pa. Dep't of Health*, No. 1:11-CV-688, 2012 WL 2049488 (M.D. Pa. June 6, 2012). Although it is unclear from the record, this case appears to be ongoing.

Wei also filed a complaint against the Department and various Department employees in the Dauphin County Court of Common Pleas on July 22, 2011, challenging his dismissal. By order dated August 25, 2014, the common pleas court dismissed Wei's complaint for lack of jurisdiction based on Wei's failure to effectuate proper service of the complaint. Wei appealed to this Court, and, on June 18, 2015, we affirmed the order of the common pleas court. *Wei v. Dep't of Health*, (Pa. Cmwlth., No. 1500 C.D. 2014, filed June 18, 2015).

21, 2015, the Commission denied the motion. Citing *Fritz v. Department of Transportation*, 468 A.2d 538 (Pa. 1983), the Commission found that Wei's alleged newly discovered evidence, *inter alia*, internal e-mail conversations that both included and did not include Wei, meeting minutes, and Department policies and reports, was neither concealed by fraud nor otherwise unavailable to be discovered by Wei at the time of his original administrative hearing. Accordingly, the Commission determined that the alleged newly discovered evidence did not meet the standard necessary to grant Wei's motion to reopen the case. On February 10, 2015, Wei filed an application for reconsideration, which the Commission denied by letter dated March 12, 2015. Wei filed a petition for review with this Court as well as a separate motion for sanctions. *Wei II*, slip op. at 4.

In *Wei II*, we affirmed the Commission's denial of Wei's application to reopen the case. In doing so, we reasoned that Wei filed his motion to reopen after an adjudication had been issued and that the Commission did not abuse its discretion in determining that his alleged newly discovered evidence was not fraudulently concealed or otherwise unavailable at the time of his original administrative hearing. The Court also denied Wei's motion for sanctions in an order dated September 22, 2015. Wei then filed a motion for reconsideration and a petition for allowance of appeal,[4] both of which were denied.

On September 21, 2016, Wei filed a second motion to reopen the case, arguing that newly discovered evidence contradicted key testimony of the

_____

[4] *Wei v. State Civil Service Commission (Department of Health)*, 134 A.3d 58 (Pa. 2016) (unpublished table decision).

5

Department which supported the just cause to terminate him. On November 18, 2016, the Commission again dismissed Wei's appeal, stating:

> This is appellant's second request for the Commission to Reopen and reconsider its original adjudication of this 2007 appeal based on alleged "newly discovered evidence." The Commission has carefully reviewed appellant's current motion and finds therein no evidence that was not also available to appellant when his previous motion to reopen this appeal based on newly discovered evidence was filed by him on December 17, 2014. That motion was denied by the Commission by Order dated February 6, 2015. . . . In the absence of any additional evidence which was not already available to appellant for inclusion in his December 17, 2014 Motion to Reopen, this second Motion to Reopen is found to be frivolous and is accordingly denied on that basis.
>
> The appointing authority has asked the Commission to bar appellant from filing another future Motion to Reopen, but has cited no legal authority which would empower the Commission to issue such an order; nor is the Commission aware of any statute conferring upon it such power. Accordingly, the appointing authority's request is denied. However, the Commission notes that this Motion to Reopen is frivolous and that it will also find similar Motions to Reopen filed in the future which are also not supported by actual new evidence, to be likewise. Should appellant take an appeal from this order to the Commonwealth Court, the Commission is of the belief that sanctions applicable to frivolous appeals, which the Commonwealth Court does have the power to impose, ought to be requested by the appointing authority, and considered by the Court. *See*: Pa. R.A.P. 2744.

(Commission's 2016 order at 1-2.)

As the Commission predicted, Wei filed an appeal to this Court, arguing his alleged "newly discovered evidence" requires that the case be reopened.

6

## Discussion

### A. Wei's Motion to Reopen

On appeal,[5] Wei continues to make many of the same arguments he made to this Court in *Wei I* and *Wei II*. In his first two arguments, he asserts that (1) the Commission erred in determining that his second motion to reopen was frivolous and did not contain any additional facts unique from the first motion to reopen; and (2) the two cases that the Commission and this Court relied on in denying his first motion to reopen are distinguishable. The remainder of Wei's arguments appear to take issue with facts underlying the Commission's 2008 adjudication and order. Specifically, Wei claims that the Commission's 2008 adjudication is clearly erroneous and creates a manifest injustice based on documents he obtained in his federal suit against the Department; the Commission erred in ignoring that the Department committed fraud by making assertions in its 2008 and 2015 briefs based on false testimony of Department employees during his administrative hearing; and the Commission erred in denying Wei's request for an interpreter during his administrative hearing.

Again, we note that "[a] decision to . . . reopen a record is within the discretion of an administrative agency, and the exercise of that discretion by the agency will not be reversed unless a clear abuse is shown." *Fritz*, 468 A.2d at 539.

---

[5] "This Court's scope of review of a decision of the Commission is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether substantial evidence supports the necessary findings of fact made by the Commission." *Webb v. State Civil Service Commission (Department of Transportation)*, 934 A.2d 178, 184 n.2 (Pa. Cmwlth. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion without weighing the evidence or substituting the judgment of the Commission." *Quinn v. State Civil Service Commission*, 703 A.2d 565, 571 (Pa. Cmwlth. 1997).

A petition to reopen is properly denied if there are no material changes of fact or law or new evidence that was not discoverable prior to the conclusion of the hearing. *Shoemaker v. State Employes' Retirement Board*, 688 A.2d 751, 753 (Pa. Cmwlth. 1997).[6]

> After the conclusion of a hearing in a proceeding or adjournment thereof sine die, a participant in the proceeding may file with the presiding officer, if before issuance by the presiding officer of a proposed report, otherwise with the agency head, a petition to reopen the proceeding for the purpose of taking additional evidence. The petition shall set forth clearly the facts claimed to constitute grounds requiring reopening of the proceeding, including material changes of fact or of law alleged to have occurred since the conclusion of the hearing.

1 Pa. Code §35.231(a). However, GRAPP does not provide for the reopening of a case after the adjudication has been issued. *See Commonwealth, Department of Justice v. State Civil Service Commission*, 319 A.2d 692, 693-94 (Pa. Cmwlth. 1974) (holding that, in accordance with the Civil Service Act[7] and GRAPP, a case may be

---

[6] In his brief, Wei takes issue with the *Fritz* and *Shoemaker* cases that the Commission and this Court cited in *Wei II* and attempts to distinguish them based on the facts of those cases which were irrelevant to their holdings and applicability to his case. For example, Wei argues that, unlike in *Fritz* or *Shoemaker*, in his case, there was a dispute as to testimony. This argument is unavailing because the fact that there was not a dispute regarding testimony in either case was entirely irrelevant to the Courts' holdings, as *Fritz* and *Shoemaker* merely restate the basic and well-settled test for determining when to open the record. Furthermore, Wei cannot collaterally attack this Court's decision in *Wei II* in his present appeal from a subsequent decision of the Commission. *See Weiner v. Lee*, 669 A.2d 424, 427-28 (Pa. Cmwlth. 1995).

[7] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1 – 741.1005.

reopened prior to the issuance of an adjudication only where there is additional evidence to be presented).

We further note that, in this matter, an adjudication had been issued in 2008, twice upheld upon reconsideration, and twice affirmed by this Court. *See Wei I*, *Wei II*. Pursuant to 1 Pa. Code §35.231, a case may only be reopened for the purpose of taking additional evidence when there have been material changes of fact or law that have occurred since the conclusion of the hearing. Pursuant to 1 Pa. Code §35.241, "[a]n application for rehearing or reconsideration may be filed by a party to a proceeding within 15 days . . . after the issuance of an adjudication or other final order by the agency."

Here, Wei is again requesting that the record be reopened for the introduction of alleged newly discovered evidence well past the time for him to make such a request. An adjudication has already been issued in this case, and, as stated earlier, GRAPP, the Civil Service Act, and the Commission's rules do not provide for the reopening of a case once the decision has been rendered. 1 Pa. Code §35.231(a); *Department of Justice*.

Moreover, as in *Wei II*, Wei's arguments, even if timely made, are not persuasive. Wei asserts that he can show newly discovered evidence in the form of various "admissions" and stipulations by the Department in the parties' federal case, namely, an interrogatory response and a webpage from the Pennsylvania Department of Human Resources and Management (PA DHRM) titled "Classification." Wei also contends that he possesses newly discovered evidence consisting of other documents pre-dating his original administrative hearing such as e-mails and meeting minutes dated December 2004 to August 2007; a 2005-06 program revision request proposal requesting an increase in staff to assist in processing HIV/AIDS disease reports;

9

Department charts on the HIV team's structure in 2004 and 2006 plan for backlog reports; slides from a 2003 presentation by New Jersey's Department of Health and Senior Services; a 2007 itinerary for an annual "CSTE Conference"; a table listing 2004 HIV/AIDS ratios in select states; the Department's August 2007 suspension letter to Wei; documents detailing Wei's position description and responsibilities; and a document on court interpreters at hearings before the Commission.[8] (Reproduced Record (R.R.) at Doc. B, p. 1-2.)[9] We note that nearly all of these documents appear in the records of *Wei I* and *Wei II*.

With regard to the Department's "admissions" and stipulations, which post-date the hearing, Wei argues that, based on this new information, including a webpage from PA DHRM's website and a document detailing Wei's position description, Wei's job duty did not include converting data. (Wei's Brief at 30.) Specifically, Wei argues that, when viewing the duties listed in his position description in light of the Department's recent "admission" that "[p]osition descriptions should be up to date at all times," it is clear that processing the HIV

---

[8] We observe that virtually all documents in Wei's reproduced record, aside from his second motion to reopen and a reply to the Department's response to his second motion to reopen, appear to be excerpts of documents from his federal case, pieced together in no particular order, in such a way that they lack context and leave the reader to guess what the documents are. Moreover, the citations following many of Wei's key arguments asserting newly discovered evidence are to various paragraphs in his second motion to reopen. The citations following these paragraphs are generally in the form: "(DFC. [page], [paragraph number])." In his second motion to reopen, Wei explains that DCF means "document of the federal case" and explains that, "because all Defendants have all DFCs, Wei cites DFCs' number directly if they are not extracted in his attachment ("Att.")." (R.R. at Doc. A, p. 2.) It appears, however, that Wei does not understand that this Court lacks access to the referenced entries on the docket in his federal case and, because he has not provided them, these statements consist merely of bald allegations lacking support.

[9] Wei's reproduced record was not submitted with sequential page numbering followed by a lowercase "a" as required by Pa. R.A.P 2173. Hence, we will use Wei's format as set forth above.

10

reports was not his job, but merely "his extra work." (Wei's Brief at 25.) Thus, he argues, failure to complete something that was not in his position description should not have been used as just cause to fire him.

The Department, however, never made any such admission. The statement that "[p]osition descriptions should be up to date at all times" comes from a printout from PA DHRM's website, dated September 8, 2016, which Wei does not argue was unavailable at the time of his hearing. (R.R. at Doc. B, p. 3-4.) Moreover, it is paradoxical to think that Wei would not have known what his position's duties included or that he would not have had access to such information prior to the hearing.[10] A statement on a website unrelated to the Department indicating that position descriptions should be up to date does not shed any additional light on the matter of what Wei's job duties entailed. Therefore, the fact remains that Wei could have made this argument during the original administrative hearing in 2007 and, as such, Wei has not presented new evidence.

Wei also argues that the Department "admitted [in federal court] that it never assigned Wei to convert HARS HIV/AIDS data files" and that, based on what appears to be the Department's written response to an interrogatory from the federal case admitting that a December 2006 meeting occurred and referencing a March 1, 2007, e-mail between a Bureau of Information and Technology (BIT) employee and Wei,[11] the real "task" was something else entirely, *i.e.*, to "get an estimated number with incoming 2007 BIT draft format [sic]." (Wei's Brief at 24.) Wei argues that he

---

[10] Notably, the same document provided by Wei describing his position's duties appeared in the original certified record of *Wei I* submitted April 23, 2008 as an exhibit to the transcript of the original administrative hearing, in a document labeled "Exhibit AA-6."

[11] (R.R. at Doc. B, p. 55.)

completed the real task by e-mailing "the estimated number to Giallo[, an employee at BIT,] and Urdaneta." (Wei's Brief at 24.) In other words, Wei asserts that the assignment was something other than what the Commission and this Court determined it was in *Wei I* and that, according to his definition of the assignment, he completed it.

Initially, we note that the citation following Wei's assertion that the Department admitted Wei was not given an assignment to convert data is merely to a paragraph in Wei's second motion to reopen asserting the same.[12] *See supra* note 7. Thus, Wei provides no support for this argument.

Secondly, contrary to Wei's assertion, the Department's response to an interrogatory in the parties' federal suit does not constitute newly discovered evidence. Instead, it must be considered newly *created* evidence as Wei only commenced the suit in April 2011, nearly four years after the hearing. Moreover, Wei has not explained how this response sheds any new light on his argument, particularly since the response merely confirmed the occurrence of a December 1, 2006 meeting, which Wei attended, and proceeded to quote an e-mail summarizing it.[13]

---

[12] (R.R. at Doc. A, ¶4.)

[13] The pertinent interrogatory and response reads:

> A. On December 1, 2006, BIT and HIV team held a meeting room and reached an consensus [sic] to review the document entitled "Project Charter and Scope Plan" drawn by BIT.
> Yes _____ No ____ x ____
>
> B. Please provide any documents and any emails for the subsequent decision of the Project charter and Scope Plan.

**(Footnote continued on next page…)**

With regard to the remainder of the documents pre-dating the hearing, Wei, as in his first motion to reopen, makes the argument that the Department fraudulently concealed these documents from him, that he did not discover them until

---

**(continued…)**

RESPONSE: The Department agrees that on December 1, 2006, BIT and HIV staff held a meeting in the BIT meeting room and a document entitled "Project Charter and Scope Plan" may have been discussed. There was no consensus reached on the document or its future application to the Department. The Department is not aware of any documents or emails regarding the decision to not implement the Project Charter and Scope Plan. Since Plaintiff never completed his assignment, the Department would not have been in a position to implement the Project Charter and Scope Plan. The backlog data was critical to the decision-making process. By way of further response, Mr. Giallo sent an email to Dr. Urdaneta in which he summarized the substance of the December 1, 2006 meeting:

> The Meeting agreement was for BIT to provide a draft CSV format (provided to HIV on 1/25) so Plaintiff could get an estimated number of 2005 (only focus for the conversion) records (by determining what requirement fields were available in the backlogged 2005 records based upon the CSV format) that could be converted in PA-NEDSS [Pennsylvania National Electronic Disease Surveillance System]. With this number of potential records to be converted, we (BIT and HIV) would meet again and decide if this effort qualifies for a major release like R12 or data entry effort using the NEDSS online lab short by a staff member or data entry clerk. Plaintiff never came up with this actual number so this meeting never happened to determine if it should be done in R12. One disclaimer from the meeting is when Bill [Miller] emphasized . . . [the rest of this email is not provided in the Reproduced Record].

(R.R. at Doc. B, p. 55.)

13

after his administrative hearing, and that some of them were not available to him until the Department returned his belongings to him in June 2009. Wei then proceeds to cite these documents in making many of his previous arguments in *Wei I* and *Wei II* with slight modifications,[14] as well as several additional arguments.

For example, Wei argues that the Department committed fraud because he has now recently determined that there were inconsistencies between Dr. Urdaneta's testimony at the hearing in which she states she did not recall receiving an e-mail from Wei with his estimate about the 2005 HIV reports, (R.R. at Doc. B, p. 58-59), and the contents of a March 1, 2007 e-mail he sent to Mr. Giallo, on which Dr. Urdaneta was copied, stating, "As I told you in the meeting last December, we estimate 2000 potential cases." (R.R. at Doc. B, p. 33.) Thus, Wei argues, the Commission erred in ignoring this "newly admitted evidence," which he believes "alone could topple the just cause" for firing him. (Wei's Brief at 24.)

As we stated in *Wei II*,

> [Wei] was aware of the Department's meeting and was a party to the majority of the e-mail correspondence. Thus, [Wei] has not presented any evidence, besides his bald assertions, that the Department fraudulently concealed any documents from him prior to his original administrative hearing or that these records were unavailable to him before his administrative hearing commenced. *Shoemaker; Fritz* . . . [Wei] merely seeks to relitigate issues decided by

---

[14] For example, in one of these arguments, Wei continues his assertion that it was not possible for him to complete the assignment in three weeks, but he now adds an allegation of fraud, arguing that the Department "documented" that even with the whole HIV team, including Wei, working at top speed, it was not possible to process 50,000 HIV reports per month. (Wei's Brief at 38.) Moreover, Wei argues, that the Department admitted that, as of 2014, it still had not completed "this top priority yet." (Wei's Brief at 38.) As mentioned above, these assertions hinge on documents from Wei's federal case; however, the reproduced record Wei has provided only contains small excerpts of these documents lacking context, if at all. *See supra* note 7.

14

> this Court in *Wei I*, and the appropriate remedy for such was to file a petition for rehearing within fifteen days after the issuance of an adjudication, which occurred in 2007 in this case.

*Wei II*, slip op. at 9. Therefore, we decline to entertain Wei's arguments based upon these documents which were available to Wei at the time of the hearing, as they do not constitute "newly discovered evidence."

We do note the following, however, with regard to Wei's argument regarding the Commission's alleged error in denying Wei an interpreter during the hearing. Wei first raised this argument in *Wei I*, where he asserted that the Commission violated the Federal Court Interpreters' Act, 28 U.S.C. §1827, by failing to provide him a Chinese interpreter. We dismissed this argument as that law, by its own terms, only applied to United States district courts. *Wei I*, 961 A.2d at 258. In *Wei II*, Wei renewed this argument, which we dismissed as previously decided in *Wei I*. Presently, Wei renews this argument a third time citing a violation of 2 Pa.C.S. §§ 561 – 568 (Administrative Proceeding Interpreters for Persons with Limited English Proficiency).

This argument fails because, as this Court noted in *Seltzer v. Department of Education*, 782 A.2d 48 (Pa. Cmwlth. 2001), "the mere demonstration of a potential procedural error, without also alleging a resulting harm, is not sufficient reason to disturb an agency adjudication." *Id.* at 53. Not only does Wei fail to provide any evidence that an interpreter was ever requested, but, moreover, he also fails to indicate how he was prejudiced. Wei merely asserts that it was a violation of his procedural rights and that "it prejudiced [him]." (Wei's Brief at 43.) Mere assertion of prejudice does not constitute the required allegation of resulting harm. *Seltzer*.

15

Finally, throughout his brief, Wei continually makes reference to a 2007 "motion to quash" that was granted regarding a subpoena he claims to have served on the Department prior to his hearing. Wei asserts that this prevented him from discovering "many key documents" that he later discovered and included in his first motion to reopen. (Wei's Brief at 11.) However, Wei has not provided a copy of any such subpoena, and a thorough review of the record reveals the only first page of an undated, unsigned "Motion to Quash Subpoena in Part and For a Protective Order," leaving it unclear when or in which case it was filed. (R.R. at Doc. C, p. 2.) Further, Wei fails to explain what documents he sought and how a granted motion to quash part of a subpoena equates to fraudulent concealment of his alleged newly discovered evidence. Moreover, this argument is not properly before this Court, as any complaint regarding the alleged quashing of the 2007 subpoena could only have been raised, if at all, in his first appeal from the Commission's order and adjudication in *Wei I*.[15]

Accordingly, we find that the Commission did not abuse its discretion in determining that Wei's alleged newly discovered evidence was not unavailable to him at the time he filed his first motion to reopen.

---

[15] The alleged order granting the quashal would have been interlocutory as it was not final within the meaning of Pennsylvania Rule of Appellate Procedure 341 because it would not have disposed of all claims or all parties nor is it expressly defined as final by statute. *See* Pa.R.A.P. 341(b). It would not have been immediately appealable given that Wei's appeal was still pending before the Commission and the alleged order related only to "matters preliminary to a hearing in a discovery sense." *LeDonne v. Workmens' Compensation Appeal Board (Graciano Corp.)*, 686 A.2d 891, 892-93 (Pa. Cmwlth. 1996) (quashing as interlocutory an appeal taken from an order of a worker's compensation judge requiring compliance with a subpoena). Accordingly, should Wei have desired to challenge the order, the only means by which to do so would have been in his appeal from the Commission's final order and adjudication in *Wei I*.

## B. Sanctions

On June 6, 2017, Wei filed a motion for sanctions, to which the Department filed a timely reply on June 16, 2017.

In his motion, Wei repeats his previous arguments regarding the Department's commission of fraud, but also argues that the Department is "unlikely" to have evidentiary support for various statements in its brief that either repeat findings of the Commission in its original adjudication and order or respond to assertions in Wei's Brief.  (Wei's Motion for Sanctions at 9.)

For example, Wei contends that the Department's response to his argument that the Department admitted it never gave Wei the assignment of converting the HARS HIV/AIDS data files constitutes a "falsification."  (Wei's Motion for Sanctions at 4.)  In its brief, the Department argued that Wei's notion that he was not given this assignment "contrasts with his own words and actions," namely, in e-mails where he stated that he had transformed records into Statistical Analysis System (SAS) format.  (Respondent's Brief at 14.)   The Department continued,

> Because it is a well-established fact that Wei was tasked with converting HARS HIV/AIDS files into the SAS format, this supports the Department's position and undermines Wei's allegation.  Assuming, *arguendo*, that Wei was not assigned this task, it is puzzling as to what, exactly, Wei was doing with those files.  If Wei was not given this assignment, and instead chose to access private HIV/AIDS files without the direction of his supervisors, the Department's case for just cause becomes even stronger.

(Respondent's Brief at 15.)

17

In contrast, Wei argues that, in those e-mails, he was referring to backlog lab data, which was "totally different from HARS data" and that the Department intentionally conflated the two "to defame Wei for the purpose of justifying its cause for removal." (Wei's Motion for Sanctions at 4, 5.)[16] Wei concludes by requesting this Court grant sanctions under Pennsylvania Rules of Civil Procedure Nos. 1023.1 and 1023.2, and this Court's "inherent power . . . or other appropriate laws." (Wei's Motion for Sanctions at 2.)

However, as the Department points out, this case is proceeding under the Court's appellate jurisdiction and accordingly is governed by the Pennsylvania Rules of Appellate Procedure. *See* Pa. R.A.P. 103. Thus, Wei has not alleged a sufficient legal basis for his request. Moreover, Wei's contentions do not rise to a level justifying a grant of sanctions, as Wei has failed to demonstrate that these statements constitute anything more than assertions or established facts with which Wei disagrees. Accordingly, Wei's motion for sanctions is denied.

## Conclusion

In conclusion, for the foregoing reasons, the order of the Commission denying Wei's second motion to reopen is affirmed. Additionally, Wei's motion for sanctions is denied.

---

[16] Wei completely ignores that this very fact—that Wei was assigned the conversion assignment and failed to do it—was one of the key findings of the Commission's adjudication and order that we upheld *Wei I*, observing: "Here, Wei was terminated *for not completing the HARS HIV/AIDS assignment* by July 31, 2007 . . . The e-mails evidence that for six months Wei was insubordinate in refusing to accept responsibility for the assignment that was his to complete." *Wei I*, 961 A.2d at 259 (emphasis added).

18

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ming Wei,                         :
                  Petitioner       :
                               :    No. 1902 C.D. 2016
             v.                       :
                               :
State Civil Service Commission    :
(Department of Health),           :
                  Respondent    :

**PER CURIAM**                     ***ORDER***

AND NOW, this 1st day of September, 2017, the November 18, 2016 order of the Pennsylvania State Civil Service Commission is affirmed.  The June 6, 2017 motion of Ming Wei for sanctions is denied.