IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Walkingshaw, : 
            Petitioner : 
             : 
             : 
    v. : No. 369 C.D. 2023
             : 
Department of Human Services : 
(State Civil Service Commission), : 
            Respondent : Submitted: July 5, 2024

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                      FILED:  August 6, 2024

James Walkingshaw petitions for review of the March 20, 2023 Adjudication of the State Civil Service Commission (Commission) challenging his removal from his regular status position as a sexual responsibility and treatment program (SRTP) aide with Torrance State Hospital, Department of Human Services (DHS). We affirm.

## **Background**

Mr. Walkingshaw was employed by DHS as an SRTP aide at Torrance State Hospital from 2014 or 2015 until April 23, 2021.[1] The purpose of the SRTP is to rehabilitate patients under the age of 18 who have committed sexual assaults against minors. Comm'n F.F. No. 12.

---

[1] Mr. Walkingshaw was first hired as a psychiatric aide with DHS in 2009. He became an SRTP aide in 2014 or 2015 and held that position until his termination from employment in 2021. Comm'n Finding of Fact (F.F.) Nos. 10-11.

The instant matter arose from Mr. Walkingshaw's alleged inappropriate conduct toward his co-worker, Whitney Charlton, during the 11:00 p.m. to 7:00 a.m. shift from August 24, 2020, through August 25, 2020, in the COVID-19 isolation unit of the SRTP. The Commission made the following key factual findings relating to the incident:

15. Torrance State Hospital temporarily set up a gymnasium for SRTP patients who might contract COVID-19, where new residents reported for two weeks. The hospital assigned a registered nurse and [a] psychiatric aide to the SRTP isolation unit for each shift, including the overnight shift.

16. No other employees or patients were allowed near the gymnasium other than the assigned registered nurse and psychiatric aide for a shift because the gymnasium was an isolation area.

. . . .

20. On August 24, 2020, [Mr. Walkingshaw] and [Ms. Charlton] were the psychiatric aide and registered nurse, respectively, who were assigned to work in the SRTP unit on the overnight shift from 11:00 p.m. to 7:00 a.m.

21. [Ms. Charlton] knew [Mr. Walkingshaw] about two years prior to August 2020, and she only worked with [him] in the SRTP isolation unit. She classified their relationship as "just professional work, co[-]worker quality."

. . . .

30. On August 24, 2020, [Ms. Charlton] had a migraine and [Mr. Walkingshaw] asked her if she wanted a back[ ]rub.

31. [Ms. Charlton] accepted the back[ ]rub from [Mr. Walkingshaw] while neither of them w[as] on break because she had a migraine and was hoping for some kind of relief.

2

32. Around midnight during their overnight shift on August 24, 2020, while giving [Ms. Charlton] a back[ ]rub, [Mr. Walkingshaw] tried to reach down [her] pants. [Ms. Charlton] was wearing jeans and a belt, and [Mr. Walkingshaw] was unable to reach down the front of her pants. [Mr. Walkingshaw] tried to reach down the back of [Ms. Charlton's] pants a couple of times.

33. [Ms. Charlton] did not verbally object to [Mr. Walkingshaw] reaching down her pants or shirt because she was in shock, she did not know what to do, and she froze.

34. [Ms. Charlton] was wearing a regular T-shirt with a bra underneath. [Mr. Walkingshaw] reached from the bottom of [Ms. Charlton's] shirt and underneath [her] bra with both hands.

35. [Mr. Walkingshaw] asked [Ms. Charlton] to take off her bra while his hands were on her breasts.

. . . .

39. [Mr. Walkingshaw] asked [Ms. Charlton] personal questions such as whether she shaved down there or if she and her boyfriend had anal sex. He stated it was a shame if she and her boyfriend did not.

40. [Ms. Charlton] laughed nervously when [Mr. Walkingshaw] asked if she shaved down there, which she assumed to mean her genital region.

41. [Mr. Walkingshaw] asked [Ms. Charlton] uncomfortable, personal questions while he was holding her breasts.

42. When [Mr. Walkingshaw] made the inappropriate comments to [Ms. Charlton], he said them in a hushed voice into her ear, and he was very physically close to her.

43. [Mr. Walkingshaw] asked [Ms. Charlton] if he could have three minutes to do something to her. She did not hear exactly what [Mr.

3

Walkingshaw] asked, but she perceived it to be sexual in nature. She laughed nervously in response to his question and said no.

44. [Mr. Walkingshaw] thanked [Ms. Charlton] multiple times for allowing him to give her the back[ ]rub and asked [her] not to tell his wife about it.[2]

. . . .

47. The incident between [Mr. Walkingshaw] and [Ms. Charlton] on August 24, 2020, occurred around midnight and lasted around [10] to [12] minutes.

*Id.* Nos. 15-16, 20-21, 30-35, 39-44, & 47 (internal citations omitted).

In the hours and days following the conclusion of her overnight shift, Ms. Charlton reported the incident to several co-workers as well as her nursing supervisor, Jillian Troyan, and human resources representative Jennifer Rydbom. *Id.* Nos. 61-75.

Ms. Charlton filed a complaint with DHS's Bureau of Equal Opportunity (BEO). On February 18, 2021, after interviewing Ms. Charlton, the BEO initially determined that her claims were unsubstantiated. Ms. Charlton filed a request for reconsideration with Carolyn Ellison, DHS's Deputy Secretary of Administration, who conducted a further investigation into her claims. On March 25, 2021, Ms. Ellison concluded that there was sufficient evidence to support Ms. Charlton's allegations against Mr. Walkingshaw.

Thereafter, DHS suspended Mr. Walkingshaw, effective August 26, 2020, pending an investigation into his alleged inappropriate conduct with Ms. Charlton. Following its investigation, DHS removed Mr. Walkingshaw from his position as a regular status SRTP aide, effective April 23, 2021.

---

2 Mr. Walkingshaw's wife also worked in the SRTP unit at Torrance State Hospital. Comm'n F.F. No. 45.

4

The charges against Mr. Walkingshaw were based on his violation of Executive Order 2002-4, titled "Prohibition of Sexual Harassment in the Commonwealth," which prohibits "[s]exual harassment by any Commonwealth employee against any other employee, applicant for employment, client, or other person receiving services from or conducting business with the Commonwealth." Comm'n F.F. No. 4. The charges were also based on Mr. Walkingshaw's violation of Management Directive 505.30, titled "Prohibition of Sexual Harassment in Commonwealth Work Settings," which outlines the reporting procedures for violations of Executive Order 2002-4. *Id.* No. 5. Executive Order 2002-4 and Management Directive 505.30 define "sexual harassment" as follows:

> Unwelcome sexual advances, requests for sexual favors, and/or other verbal, visual, or physical conduct of a sexual nature where:
>
> a. submission to or rejection of such conduct is made either explicitly or implicitly a term or condition of an individual's employment; or
>
> b. submission to or rejection of such conduct by an individual is used as a basis for employment decisions affecting such individuals; or
>
> c. such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment.

*Id.* No. 7. Finally, the charges against Mr. Walkingshaw were based on his violation of Executive Order 2016-04, titled "Equal Employment Opportunity," which prohibits discrimination against any employee "because of race, color, religious creed, ancestry, union membership, age, gender, sexual orientation, gender identity or expression, national origin, AIDS or HIV status, or disability." *Id.* No. 6.

Mr. Walkingshaw appealed to the Commission, which held evidentiary hearings via video on May 2, 2022, and June 9, 2022. DHS presented the testimony of the following witnesses: Ms. Charlton; Ms. Ellison, DHS's Deputy Secretary of Administration; Susan Fekete, Ann Bonney, and Tara Hays, registered nurses at Torrance State Hospital; Cindy Stewart, an SRTP aide; Celina Vigna, Nurse Manager at Torrance State Hospital; Lyle Gardner, Field Human Resource Officer at Torrance State Hospital; and Brittany Ann Felentzer, Forensic Registered Nurse Supervisor at Torrance State Hospital. Mr. Walkingshaw testified on his own behalf.

On March 20, 2023, the Commission issued its Adjudication dismissing Mr. Walkingshaw's appeal. The Commission ultimately concluded:

> [W]e find [DHS] had just cause to remove [Mr. Walkingshaw]. [His] inappropriate conduct toward [Ms. Charlton] affected his ability to perform his job duties, particularly as the SRTP unit was established to rehabilitate individuals who, before [the age of] eighteen, sexually assaulted minors. Moreover, we find [DHS] presented credible evidence establishing [that Mr. Walkingshaw's] inappropriate conduct toward [Ms. Charlton] violated the Commonwealth's sexual harassment policies.

Comm'n Adjudication at 29 (internal citation omitted). Mr. Walkingshaw now petitions for review of that decision.[3]

## Analysis

In his Petition for Review, Mr. Walkingshaw asserts that the Commission's decision is erroneous and should be set aside because

---

[3] Our review of the Commission's decision is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the Commission's factual findings are supported by substantial evidence. *Williams v. State Civ. Serv. Comm'n*, 811 A.2d 1090, 1092 n.1 (Pa. Cmwlth. 2002).

6

[he] did not violate the policy of [DHS]. Furthermore, all witnesses of [DHS] had no first[-]hand knowledge of any events. The case of [DHS] was "invented" and condoned by the . . . Commission. There was absolutely no evidence that [Mr. Walkingshaw] violated any policy or provisions of [DHS].

Pet. for Rev. ¶ 6. In essence, Mr. Walkingshaw asserts that the Commission's factual findings and credibility determinations are unsupported by substantial evidence. We disagree.

With regard to the removal of a regular status civil service employee, Section 2607 of the statute commonly known as the Civil Service Reform Act provides: "No regular employee in the classified service may be removed, except for just cause." 71 Pa C.S. § 2607.[4] The Civil Service Reform Act does not define "just cause." Our Court has explained that "just cause for removal is largely a matter of discretion on the part of the head of the department." *Perry v. State Civ. Serv. Comm'n (Dep't of Lab. & Indus.)*, 38 A.3d 942, 951 (Pa. Cmwlth. 2011). However, "just cause 'must be merit[ ]related and the criteria must touch upon [the employee's] competency and ability in some rational and logical manner.'" *Wei v. State Civ. Serv. Comm'n (Dep't of Health)*, 961 A.2d 254, 258 (Pa. Cmwlth. 2008) (citation omitted). Just cause is established where the employee is unfit, "making dismissal justifiable and for the good of the service." *Perry*, 38 A.3d at 951. "Whether the actions of a civil service employee constitute just cause for removal is a question of law fully reviewable by this Court." *Id.*

Here, Ms. Charlton testified to the sexual assault in detail, and the Commission expressly credited her testimony. *See* Comm'n Adjudication at 28

---

[4] The General Assembly repealed the former Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended*, *formerly* 71 P.S. §§ 741.1-741.1005, by the Act of June 28, 2018, P.L. 460, which became effective on March 28, 2019. The Civil Service Reform Act is now found in Title 71, Part III, of the Pennsylvania Consolidated Statutes, 71 Pa. C.S. §§ 2101-3304.

("[Ms. Charlton] credibly testified about what occurred on August 24, 2020, and she timely reported the incident to numerous Torrance State Hospital staff members."). Based on her credible testimony, the Commission found:

> *Under the pretense of giving* [*Ms. Charlton*] *a back*[ ]*rub to help with her migraine,* [*Mr. Walkingshaw*] *made unwanted, inappropriate contact with* [*Ms. Charlton*]. This inappropriate conduct included touching [Ms. Charlton] underneath her clothes without her consent as well as asking [her] personal questions regarding her sex life with her boyfriend. *This conduct clearly constitutes sexual harassment pursuant to Commonwealth policy, as* [*Mr. Walkingshaw*] *made sexually explicit comments, made inappropriate comments about* [*Ms. Charlton's*] *sexual activities, and made unwanted physical contact with* [*Ms. Charlton*]. *At no time did* [*Ms. Charlton*] *consent to* [*Mr. Walkingshaw's*] *physical contact beyond a back*[ ]*rub.* In response to the unwanted physical contact, [Ms. Charlton] froze and did not verbally object to [Mr. Walkingshaw's] conduct. [Ms. Charlton] explained she did not verbally object to [Mr. Walkingshaw's] conduct because she was not sure how either [he] or the patient [in the SRTP isolation unit] would react if she said no.

*Id.* at 27-28 (internal citations omitted) (emphasis added). The Commission also noted that Mr. Walkingshaw took advantage of the secluded and inaccessible nature of their physical surroundings when he offered the back rub to Ms. Charlton, finding:

> During th[e overnight] shift [on August 24, 2020], [Mr. Walkingshaw] and [Ms. Charlton] had to monitor only one patient in the isolation unit. That patient slept for the majority of the overnight shift, only getting up once to use the bathroom. *No other workers were allowed in and out of the isolation unit during that shift, as the gymnasium had been sectioned off for COVID-19 quarantine use. It was hard for anyone outside the isolation unit to see inside the gymnasium, as an opaque, zipped plastic covering was hung just outside the only door to the unit.* [*Mr. Walkingshaw*] *had worked in the SRTP isolation unit on multiple prior occasions, and he was aware of the barriers to see into the gymnasium as well as the secluded situation it created.*

8

*Id.* at 27 (emphasis added).

Furthermore, DHS presented the testimony of several witnesses with whom Ms. Charlton had discussed the assault in the hours and days after the incident. The Commission found that the testimony of these witnesses credibly supported Charlton's description of the assault. We conclude that the record contains substantial evidence to support the Commission's finding that Mr. Walkingshaw's conduct toward Ms. Charlton on August 24, 2020, violated DHS's policies prohibiting sexual harassment in the workplace, thereby amounting to just cause for his removal. *See* Comm'n F.F. Nos. 92-95 (finding that Mr. Walkingshaw underwent annual sexual harassment training and had signed off on DHS's sexual harassment policies).

Mr. Walkingshaw asserts that prior to this incident, he had never been disciplined by DHS, nor had he ever been accused of sexual misconduct by any other co-workers. Walkingshaw Br. at 11. However, this Court has held that "[*e*]*ven a single instance of misconduct or an error of judgment can constitute just cause for dismissal* if it adversely reflects on the fitness of a person for his duties." *Davis v. Civ. Serv. Comm'n of City of Phila.,* 820 A.2d 874, 878 (Pa. Cmwlth. 2003) (emphasis added). We agree with the Commission that Mr. Walkingshaw's actions toward Ms. Charlton rendered him unfit for his position as an SRTP aide, particularly considering that he worked with patients under the age of 18 who had committed sexual assaults against minors. *See* Comm'n Adjudication at 29 (concluding that "[a]lthough this was [Mr. Walkingshaw's] first offense, his actions were egregious enough to require his removal from employment," noting that he worked in the SRTP unit, which "was established to rehabilitate individuals who, before [the age of] eighteen, sexually assaulted minors").

Next, Mr. Walkingshaw challenges the Commission's credibility findings, asserting that the Commission should have discredited each of DHS's witnesses because none of them was present during the alleged incident and, therefore, "had no first-hand knowledge of the alleged event." Walkingshaw Br. at 7-8. He further contends that Ms. Charlton was not credible because "she had no one . . . who witnessed this supposed event, nor had she notified anyone when it occurred, [and] she needed to support her allegations by telling others so she could build a case against Mr. Walkingshaw." *Id.* at 6.

It is well settled that "[t]he Commission is the sole fact finder in civil service cases and has exclusive authority to assess witness credibility and to resolve evidentiary conflicts," and this Court "will not disturb the Commission's determinations regarding credibility or the weight of evidence." *Bosnjak v. State Civ. Serv. Comm'n*, 781 A.2d 1280, 1286 (Pa. Cmwlth. 2001). As explained above, the Commission explicitly credited Ms. Charlton's testimony because it found her account of the assault to be detailed and consistent. *See* Comm'n Adjudication at 26-28. Her testimony was also corroborated by the testimony of the co-workers with whom she confided in the hours and days after the assault. Critically, Mr. Walkingshaw presented no credible evidence to refute any of this testimony. *See* Comm'n Adjudication at 28 ("We do not find credible [Mr. Walkingshaw's] assertion that nothing inappropriate occurred between him and [Ms. Charlton] on August 24, 2020.").

Before the Commission, Mr. Walkingshaw maintained that Ms. Charlton had fabricated the sexual assault story, yet he offered no possible reason why Ms. Charlton would have falsely accused him. *See* Notes of Testimony, 6/9/22, at 564-

10

65. We conclude, based on the evidence of record, that the Commission's factual findings and credibility determinations are supported by substantial evidence.

### Conclusion

In sum, we conclude that the credible evidence of record established just cause for Mr. Walkingshaw's removal from his regular status position with DHS. Accordingly, we affirm the Commission's Adjudication.

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Walkingshaw,           :
            Petitioner          :
            :
       v.            :   No. 369 C.D. 2023
            :
Department of Human Services    :
(State Civil Service Commission),   :
         Respondent     :

# **O R D E R**

AND NOW, this 6th day of August, 2024, the Adjudication of the State Civil Service Commission, dated March 20, 2023, is hereby affirmed.

_____

ELLEN CEISLER, Judge