DEPARTMENT OF
TRANSPORTATION, Petitioner

v.

STATE CIVIL SERVICE COM-
MISSION (Bocchinfuso),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 1, 2013.
Decided Jan. 28, 2014.

Joanne S. Faul, Assistant Counsel, King of Prussia, for petitioner.

Judith P. Rodden, Philadelphia, for respondent Santo Bocchinfuso.

BEFORE: PELLEGRINI, President Judge, and COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

The Department of Transportation (DOT) petitions for review of the April 8, 2013, adjudication of the State Civil Service Commission (Commission), which sustained Santo Bocchinfuso's appeal challenging his removal from employment with DOT. The Commission reversed DOT's decision to remove Bocchinfuso and ordered that Bocchinfuso be retroactively suspended without pay, effective July 2, 2012, pending investigation and final resolution of the criminal charges filed against him. We affirm.

Bocchinfuso worked for DOT for approximately 20 years, the last four of which as a senior civil engineer supervisor. Before his discharge, Bocchinfuso had never been disciplined and received "outstand-

ing" or "commendable" ratings at his performance reviews for the prior two years. (Commission's Findings of Fact, Nos. 6–7.)

On July 1, 2012, Bocchinfuso and his wife of 19 years, Kathleen Bocchinfuso (Wife), got into a heated argument at home. Wife contacted the police, and Bocchinfuso went to a friend's house. When Bocchinfuso returned home, police arrested him for driving under the influence (DUI), and Bocchinfuso spent the night in jail. Bocchinfuso was charged the next day with aggravated assault, simple assault, DUI, and harassment. (Commission's Findings of Fact, Nos. 8–12.)

On July 2, 2012, the Montgomery Township police released Bocchinfuso and served him with a protection from abuse (PFA) order that had been filed by Wife. Bocchinfuso drove to his other home in Wildwood, New Jersey to comply with the PFA. (Commission's Findings of Fact, No. 13.)

Mary Ann Lang, Bocchinfuso's supervisor, was on vacation from July 2 to July 3, 2012. Bocchinfuso telephoned Lang at her home on July 2, 2012, and left a message stating that he was calling off work due to his arrest for a domestic incident and that he would return to work on July 5, 2012. In the message, Bocchinfuso said that he had been arrested on July 1, 2012, but he was out of jail and headed to the shore. Later that day, Bocchinfuso called Lang a second time and spoke to her. Bocchinfuso told Lang that he had been arrested for going after his wife with a sledgehammer and for DUI. He also reiterated that he would return to work on July 5, 2012. (Commission's Findings of Fact, Nos. 14, 17–19.)

On July 2, 2012, in violation of the PFA, Bocchinfuso called Wife two or three times and left non-threatening voicemail messages. Wife contacted the Montgomery Township police, not because Bocchinfuso had violated the PFA, but because he sounded depressed and she was worried about him. Wildwood police visited Bocchinfuso on both July 2 and July 3, 2012, to check on him. Bocchinfuso agreed to accompany the officers to the hospital, but instead they took him to the police station and ultimately transferred him to the Cape May County jail. (Commission's Findings of Fact, Nos. 20–25.)

On July 3, 2012, Bocchinfuso called his father, Santo Bocchinfuso, Sr. (Father) and told him that he was in jail in New Jersey. Bocchinfuso did not call DOT because the Cape May County jail only allowed collect calls, and Bocchinfuso believed that DOT would not accept his call. Bocchinfuso asked the Cape May County police about posting bail. They told him that he could not post bail because New Jersey was holding him pending his extradition to Pennsylvania. Father repeatedly called the Montgomery Township police, the Cape May County sheriff, and the Cape May County jail to try and get Bocchinfuso released but was unsuccessful. (Commission's Findings of Fact, Nos. 26–29.)

On July 5, 2012, Bocchinfuso did not report to work or call off. Lang tried to contact Bocchinfuso by calling his cell phone. Lang notified her supervisor, Scott Fletcher, that Bocchinfuso did not report to work or call off. Fletcher called Father, who explained that Bocchinfuso was in jail for violating a PFA. (Commission's Findings of Fact, Nos. 30–33.)

DOT's human resources analyst informed Fletcher and Lang that it is Commonwealth of Pennsylvania policy that if an employee is incarcerated and absent from work for more than five days, he or she will be removed from employment. Fletcher and Lang were previously un-

aware of this policy. (Commission's Findings of Fact, Nos. 34–35.)

Father called Fletcher to ask if Bocchinfuso could use leave time while he was in jail. Fletcher told Father that because Bocchinfuso was incarcerated, DOT considered him to be absent without leave (AWOL) and that DOT could discharge Bocchinfuso if he were AWOL for more than five days. (Commission's Findings of Fact, No. 36.)

Lang was on vacation from July 9 to July 10, 2012. On July 9, 2012, Bocchinfuso made a non-collect phone call to Lang. He left Lang a message stating that he was still in jail and asking if he could use leave time. Lang did not receive Bocchinfuso's message until July 11, 2012. (Commission's Findings of Fact, Nos. 39–41.)

Also on July 9, 2012, Wife called Lang at home, told Lang that she was upset, and asked her if Bocchinfuso would get fired. Wife called Lang three more times between July 9 and July 12, 2012, but Lang did not speak to her. (Commission's Findings of Fact, No. 42.)

On July 9, 2012, Fletcher called Father and reiterated that Bocchinfuso could be discharged if he remained AWOL for more than five days. Fletcher suggested that Bocchinfuso resign. Father again asked if Bocchinfuso could be placed on leave, but Fletcher told him that was not possible because Bocchinfuso was incarcerated. (Commission's Findings of Fact, Nos. 43–44.)

On July 11, 2012, Lang returned Bocchinfuso's call and told him that he had to come to work that day or he could be fired. Fletcher also called Bocchinfuso and explained the Commonwealth's AWOL policy. Fletcher again suggested that Bocchinfuso resign. (Commission's Findings of Fact, Nos. 45–47.)

Due to the July Fourth holiday and the fact that Cape May County judges sit only a few times per month, Bocchinfuso did not appear before a judge until July 16, 2012. He was then transported to Pennsylvania and appeared before a Pennsylvania judge, who released Bocchinfuso on his own recognizance. (Commission's Findings of Fact, Nos. 48–49.)

Immediately after leaving the courthouse, Bocchinfuso called Lang and left her a message stating that he would return to work the next day. Lang called Bocchinfuso back and told him not to return to work. Lang told Bocchinfuso that a pre-disciplinary conference (PDC) would be held on July 18, 2012. By letter dated July 18, 2012, DOT notified Bocchinfuso that the scheduled PDC would address DOT's allegation that Bocchinfuso was AWOL from July 5 through July 16, 2012. (Commission's Findings of Fact, Nos. 50–52.)

Bocchinfuso attended the PDC on July 18, 2012, and related the events that led to his incarceration. DOT notified Bocchinfuso, both verbally and by letter, that he was suspended pending investigation effective July 18, 2012. As part of the investigation, the Cape May County Sheriff's Office verified the dates of Bocchinfuso's incarceration. (Commission's Findings of Fact, Nos. 53–56, 58.)

On August 30, 2012, DOT removed Bocchinfuso from his position because Bocchinfuso was AWOL from July 5 through July 16, 2012, due to his incarceration in violation of the Commonwealth's AWOL policy. (Commission's Findings of Fact, Nos. 1, 60.)

Bocchinfuso timely appealed his removal to the Commission, which held a hearing on November 16, 2012. On April 8, 2013, the Commission issued an adjudication and order sustaining Bocchinfuso's appeal and reversing DOT's decision. The

Commission concluded that DOT failed to present sufficient evidence to prove that Bocchinfuso's absence from work for more than five days due to his incarceration constituted just cause for his removal under section 807 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.807.[1] Specifically, the Commission determined that DOT should not have treated Bocchinfuso as AWOL from July 5 through July 16, 2012; rather, DOT should have suspended Bocchinfuso as of July 2, 2012, the date Bocchinfuso first notified his supervisor of his initial arrest and incarceration, pending further investigation. DOT now appeals from that decision.[2]

On appeal, DOT asserts that the Commission erred in applying Part III.2 of the Governor's Code of Conduct (Governor's Code)[3] in reaching its decision. According to DOT, the Commonwealth's AWOL policy,[4] not the Governor's Code, controls this case. We cannot agree.

■ First, DOT argues that the Commission erred in finding that DOT was aware of Bocchinfuso's felony charge on July 2, 2012. According to DOT, the record is devoid of evidence that DOT knew or should have known about Bocchinfuso's felony charge on that date.

The record establishes that Bocchinfuso called Lang twice on July 2, 2012, to report that he had been arrested for going after his wife with a sledgehammer and was in jail. The first time Bocchinfuso called, he left Lang a message; the second time, he spoke directly to Lang. (N.T., 11/16/12, at 24–25.) Moreover, Lang testified that Bocchinfuso also called the office on July 2, 2012, to report his absence due to his arrest. (*Id.* at 24.) Lang further testified that DOT is notified whenever a DOT employee is arrested. (*Id.* at 59–60.) DOT's human resources analyst corroborated this testimony by testifying that in early July 2012, the Commonwealth's Office of Administration notified DOT of the charges against Bocchinfuso. (*Id.* at 135; *see id.* at 223.) The July 2, 2012, criminal complaint indicates that Bocchinfuso was

---

**1.** Section 807 of the Act states that "[n]o regular employe in the classified service shall be removed except for just cause." 71 P.S. § 741.807. The appointing authority bears the burden of proving just cause and the substance of the charges underlying the employee's removal. *Long v. Pennsylvania Liquor Control Board,* 112 Pa.Cmwlth. 572, 535 A.2d 1233, 1235 (1988).

**2.** Our review of the Commission's decision is limited to determining whether the factual findings are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Pennsylvania Board of Probation and Parole v. State Civil Service Commission (Manson),* 4 A.3d 1106, 1112 n. 11 (Pa.Cmwlth. 2010). Whether a civil service employee's actions constitute just cause for removal is a question of law reviewable by this court. *Id.* at 1112.

**3.** Part III.2 of the Governor's Code states, "As soon as practicable after an employe has been formally charged with criminal conduct ...

which constitutes a felony, the employe shall be suspended without pay. If the charge results in conviction in a court of law, the employe shall be terminated." 4 Pa.Code § 7.173.

**4.** The Commonwealth's Manual M530.7 Amended (Manual M530.7) provides the following relevant definitions. "Annual leave" is defined as "time away from the job for any reason, except incarceration." (Manual M530.7 at 20.) "Personal leave" is defined as "time away from the job for any reason, except incarceration." (*Id.* at 21.) "Absence without leave" is defined as "when an employee is absent from work and does not contact the supervisor or when an employee is absent for other unauthorized absences. **Note:** This is an unapproved absence.... After a maximum of five consecutive days of absence without leave, a termination action is implemented." (*Id.* at 54.)

charged with, *inter alia,* the felony of aggravated assault.

While it is true that DOT had not received written verification of Bocchinfuso's felony charge as of July 2, 2012, there is more than sufficient evidence that DOT knew or should have known of Bocchinfuso's arrest and incarceration for a felony on July 2, 2012. We agree with Bocchinfuso that the Commission's findings in this regard are supported by substantial evidence. Thus, Part III.2 of the Governor's Code required DOT to suspend Bocchinfuso without pay as of July 2, 2012.

█ Next, DOT argues that the Commonwealth's AWOL policy trumps the Governor's Code and provided the only basis upon which DOT could discipline Bocchinfuso for his absence due to incarceration. We disagree.[5]

In *Woods v. State Civil Service Commission (New Castle Youth Development Center),* 590 Pa. 337, 343, 912 A.2d 803, 807 (2006), the Commission upheld a residential treatment facility's removal of a youth development counselor under the Governor's Code due to his arrest for felony charges. Our court reversed the Commission's decision, concluding that the facility failed to establish just cause under the Act because there was no evidence that the employee's standing with his students had

been compromised due to his arrest. *Id.* at 344, 912 A.2d at 807–08. On appeal, the Pennsylvania Supreme Court affirmed in part and reversed in part. Significantly, the Supreme Court agreed with this court that the employee's arrest alone did not establish just cause for his removal because the arrest was unrelated to his job performance and did not touch upon his competency to perform his job. *Id.* at 346, 912 A.2d at 809. Rather, the employee's arrest warranted his suspension under section 803 of the Act[6] pending resolution of the criminal charges. *Id.* at 348–49, 912 A.2d at 810–811. Therefore, the Supreme Court reinstated the employee with back pay. *Id.* at 352, 912 A.2d at 812.

Contrary to DOT's assertion, *Woods* demonstrates that the Governor's Code is relevant to a just cause determination under the Act when criminal charges are at issue. The Supreme Court explained that "a violation of the Governor's Code itself does not constitute sufficient reason to discharge an employee. . . . [I]t does not take precedence over the statutory provisions to the contrary[,] which require dismissal of civil service employees to be predicated on just cause." *Id.* at 350, 912 A.2d at 811. The Supreme Court emphasized that the Governor's Code requires removal of a civ-

---

5. DOT also contends that the Commission erred in applying the Governor's Code because the AWOL policy was the only issue before the Commission. (DOT's Br. at 13.) This claim is belied by the record. DOT, not the Commission, placed the Governor's Code at issue in this case. In its July 18, 2012, letter to Bocchinfuso, DOT informed Bocchinfuso that he "violated the Governor's Code of Conduct when [he was] arrested on July 1, 2012." (R.R. at 205a.) In its July 19, 2012, letter to Bocchinfuso, DOT informed Bocchinfuso that he was suspended "pending further investigation into allegations of violation of the Governor's Code of Conduct." (R.R. at 207a.) Furthermore, DOT's Request for Ap-

proval to Discharge or Suspend stated that it was based on Bocchinfuso's "[v]iolation of the Governor's Code of Conduct." (R.R. at 152a.) As the Commission notes, DOT was obviously aware that the Governor's Code applied because upon Bocchinfuso's release from prison, DOT suspended him pending investigation of the criminal charges against him. (Commission's Op. at 21.)

6. Section 803 of the Act provides that "[a]n appointing authority may for good cause suspend without pay for disciplinary purposes an employe holding a position in the classified service." 71 P.S. § 741.803.

il service employee *only if* the employee is *convicted* of a felony. *Id.*

Furthermore, the Governor's Code, which is codified at 4 Pa.Code § 7.173, is an administrative regulation. Manual M530.7, which contains the AWOL policy, is a management directive that does not have the force and effect of law. *See Cutler v. State Civil Service Commission (Office of Administration)*, 924 A.2d 706, 711–12 (Pa.Cmwlth.2007). Therefore, the Commission correctly determined that "the requirements of the Governor's Code of Conduct, which is a fully enacted and codified Pennsylvania regulation, take precedence over the policies contained in Manual M530.7." (Commission's Op. at 20.)

 Finally, DOT contends that Bocchinfuso's violation of the AWOL policy was alone sufficient to establish just cause for his removal. Although "just cause" is not statutorily defined, our Supreme Court has held that an employee's removal must be merit-related, *i.e.*, "related to the employee's competency and ability to perform his job, or arise from conduct rendering him unfit for the position he occupies." *Woods*, 590 Pa. at 346, 912 A.2d at 809.

Here, DOT did not base its decision to discharge Bocchinfuso on his job performance or competency, which by all accounts was exemplary throughout his 20–year employment. Before July 2012, Bocchinfuso had never been disciplined, used minimal leave time, and consistently received outstanding performance reviews. (Commis-

sion's Findings of Fact, No. 7; N.T., 11/16/12, at 42–43.) The parties also stipulated on the record that Bocchinfuso had "substantial" leave time available to him in July 2012. (N.T., 11/16/12, at 158–59.) In fact, Lang testified that she would have allowed Bocchinfuso to use his accrued leave time during the period in question had she been permitted to do so. (*Id.* at 59–60.)

Moreover, the record shows that several extraordinary circumstances led to Bocchinfuso's extended absence from work. Bocchinfuso was released from prison on July 2, 2012, and intended to return to work on July 5, 2012, as he had reported to Lang. After his release, Bocchinfuso traveled to his home in New Jersey, but he was arrested again on July 3, 2012, for violating the PFA by contacting Wife via telephone. Due to the July Fourth holiday and the irregular schedule of Cape May County judges, Bocchinfuso had to wait 13 days for his arraignment. During this time, Bocchinfuso, Father, and Wife called DOT numerous times to explain Bocchinfuso's situation and ask if he could use accrued leave time while he awaited arraignment. DOT denied these requests. When Bocchinfuso finally appeared before a judge, he was extradited to Pennsylvania that same day and released on unsecured bail. Thus, had it not been for the unique timing and location of Bocchinfuso's second arrest, he likely would not have been absent from work for more than five days.[7]

---

7. For these reasons, this case is distinguishable from *Zielinski v. Luzerne County Assistance Office*, 107 Pa.Cmwlth. 414, 528 A.2d 1028 (1987), on which DOT relies. In *Zielinski*, we upheld the removal of a civil service employee who was incarcerated for an indefinite period due to a probation violation. The employee allegedly engaged in illegal bookmaking while he was on probation for the same conduct. *Id.* at 1028–29. Before reporting to prison, the employee requested a leave of absence. The employer denied the request because the employee had no personal leave time available and discharged the employee on his first missed work day. *Id.* at 1029. We held that the employee's unavailability for work for an indefinite period established just cause for his removal under the Act. *Id.* Unlike the employee in *Zielinski*, however, Bocchinfuso had substantial leave time available to him and was not serving a prison sentence. Rather, he was detained for 13

In sum, DOT discharged Bocchinfuso because he missed eight days of work, due to circumstances largely beyond his control, during a period when DOT was required to suspend him under the Governor's Code. We agree with the Commission that if DOT had properly suspended Bocchinfuso as of July 2, 2012, Bocchinfuso could not have been considered AWOL from July 5 through July 16, 2012. Under these circumstances, we conclude that DOT failed to establish just cause for Bocchinfuso's removal under the Act.[8]

Accordingly, we affirm.

### ORDER

AND NOW, this *28th* day of *January,* 2014, we hereby affirm the April 8, 2013, adjudication of the State Civil Service Commission.

days while awaiting arraignment and was ultimately extradited and released the same day that he finally appeared before a judge.

8. According to DOT, the criminal charges against Bocchinfuso have since been dropped. (DOT's Br. at 7 n. 1; *see* N.T., 11/16/12, at 285–89, 355–56.)