IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Labor and Industry, :
Workers' Compensation Office of :
Adjudication, :
:
Petitioner :
:
v. : No. 1768 C.D. 2019
: Argued: December 8, 2020
State Civil Service Commission :
(McCormick), :
:
Respondent :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED:  July 8, 2021


The Commonwealth of Pennsylvania (Commonwealth), Department of Labor and Industry (Department), Workers' Compensation Office of Adjudication (collectively, Appointing Authority) petitions for review of the Adjudication and Order of the State Civil Service Commission (Commission) sustaining the appeal of Andrea McCormick (WCJ) challenging her removal from regular employment as a workers' compensation judge,[1] and directing that WCJ's removal by Appointing

---

[1] Her removal was based on purported violations of the Code of Judicial Ethics (Code of Ethics) contained in Section 1404 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, 77 P.S. §2504. Section 1404(a)
**(Footnote continued on next page…)**

Authority be expunged and that she be returned to her regular employment with reimbursement of wages and emoluments lost from the date of her removal, less wages earned and benefits received under the Public Laws of Pennsylvania. We affirm.

WCJ served as a workers' compensation judge from 2006 until October 1, 2018, when her employment was terminated by Appointing Authority. During the time that she served as a workers' compensation judge, WCJ was assigned to the Philadelphia Office of the Workers' Compensation Office of Appeals (WCOA). As a workers' compensation judge, WCJ was responsible for conducting hearings and adjudicating all issues litigated between employees, employers, and insurance carriers under the provisions of the Act and the Pennsylvania Occupational Disease Act.[2] WCJ was also responsible for managing a continuing caseload of hundreds of cases in a prompt and efficient manner while protecting the due process rights of all of the parties.

---

outlines the duties imposed upon a workers' compensation judge. *See* 77 P.S. §2504(a). In turn, Section 1404(b) states, "Any workers' compensation judge who violates the provisions of clause (a) shall be removed from office in accordance with the provisions of the [former Act of August 5, 1941, P.L. 752, *as amended*, *formerly* 71 P.S. §§741.1-741.1005, repealed and replaced by the Act of June 28, 2018, P.L. 460, 71 Pa. C.S. §§2101-3304], known as the "Civil Service Act."

As a Commonwealth and Department employee, WCJ is also subject to: (1) the Governor's Code of Conduct and the Information Technology Acceptable Use Policy (Governor's Code of Conduct), Executive Order 1980-18, Revision No. 3, *as amended*, *see* Reproduced Record (R.R.) at 1083a-1094a; (2) Management Directive 205.34, *as amended*, Enclosure 1 to Management Directive 205.34 Amended (IT Directive), *see* R.R. at 1102a-1107a, 1108a-1118a; (3) Management Directive 205.33 Amended (Workplace Violence Policy), *see* R.R. at 1095a-1101a; and (4) Performance Expectations Workers' Compensation Judge (Performance Expectations), *see* R.R. at 1119a-1126a, 1127a-1135a, 1364a-1368a, 1376a-1380a. Her removal was based on purported violations of these Commonwealth Standards of Conduct as well.

[2] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §§1201-1603.

2

Prior to her removal, Appointing Authority had never taken any disciplinary action against WCJ. In WCJ's performance reviews for July 2009 to July 2010, and July 2012 to July 2013, the Judge Manager, WCJ's supervisor, found that she met and exceeded the expectations of her position by issuing reasoned and timely decisions, and running her courtroom well. *See* R.R. at 1127a-1131a, 1364a-1368a. In WCJ's performance review for December 2014 to October 2016, the Judge Manager indicated that WCJ maintained a professional adjudicative office and that she was consistent in her attempts to apply the law to the factual situations. *See id.* at 1376a-1380a. In the last performance review before her removal, for October 2016 to October 2017, the Judge Manager indicated that WCJ maintained a professional adjudicative office and continued her efforts with respect to case management. *See id.* at 1406a-1410a. The Judge Manager stated that WCJ was consistent in her attempt to apply the law to the factual situations and that she exhibited appropriate judicial demeanor and was observed to conduct her courtroom professionally. *See id.*

In June 2015, a claimant's counsel (Counsel) forwarded an internal email chain to the Department's Secretary in which an associate at Counsel's firm noted that while WCJ appeared sympathetic toward his client, she nevertheless denied his motion for a default judgment. On June 6, 2017, Counsel submitted a complaint to the Department's Deputy Secretary for Compensation and Insurance (Deputy Secretary) in which he notes another matter before WCJ in which his client was not successful. On June 7, 2017, Counsel forwarded an email to the Deputy Secretary in which WCJ complimented a brief written by Counsel's firm, and asserted that the compliment was inappropriate because the firm ultimately lost the case. On June 8, 2017, Counsel forwarded another email to the Deputy Secretary

3

accusing WCJ of issuing a ruling contrary to an unreported Commonwealth Court decision; however, WCJ's ruling was made prior to the filing of this Court's opinion. On July 5, 2017, Counsel forwarded yet another email to the Deputy Secretary asserting that WCJ's decision in a matter was "absolutely sickening," with a Workers' Compensation Appeal Board decision attached that reversed in part, modified in part, and affirmed in part WCJ's decision. On November 7, 2017, Counsel emailed the Deputy Secretary regarding a delay in receiving a compromise and release decision from WCJ, which included a period in which WCJ was on leave for October 16, 2017 shoulder surgery. On October 13, 2017, prior to her leave for surgery, WCJ wrote the settlement agreements in the matter complained of in Counsel's email, which were to be circulated in her absence and approved by another workers' compensation judge.

In response to the foregoing complaints by Counsel, Appointing Authority reviewed 104 decisions issued by WCJ in which Counsel's firm represented a party in the proceedings to determine whether she had acted inappropriately. The decisions that were reviewed included final decisions, supersedeas decisions, and interlocutory decisions. Upon reviewing the 104 decisions, Appointing Authority concluded that WCJ acted impartially in matters involving Counsel's firm because she found in favor of claimants represented by Counsel's firm approximately 50% of the time, and she found in favor of the employer the other 50% of the time. Appointing Authority also reviewed the transcripts of four or five cases involving the participation of Counsel's firm, and did not find any impropriety on WCJ's part.

On February 6, 2018, Counsel again emailed the Deputy Secretary to ask how to proceed in a matter in which WCJ, who was the presiding judge, spoke

4

with another workers' compensation judge about a matter prior to assignment for its mediation. Counsel specifically wanted direction on what should be done when WCJ, as presiding judge, was acting in this fashion. However, a recusal motion was never filed in the matter.

On February 21, 2018, Counsel emailed the Deputy Secretary complaining that WCJ had denied a subpoena request. In March 2018, upon investigating the complaint, Appointing Authority determined that WCJ had acted impartially with respect to the subpoena request.

On July 23, 2018, another attorney with Counsel's firm (Counsel's Partner) complained about WCJ's denial of a request to approve a stipulation of fact. WCJ denied the request because the stipulation did not resolve all of the issues in the litigation. The stipulation was received into evidence at a March 13, 2018 hearing, and the parties were given an expedited briefing schedule to address the unresolved issues.

In late July 2018, Counsel's firm complained that WCJ was having a personal romantic relationship with an attorney appearing before her and there was a potential bias in how WCJ was treating Counsel's firm. With respect to her personal relationship, in March 2015, a recusal was put in place that recused WCJ from hearing cases in which the lawyer with whom the WCJ was having a personal romantic relationship or his law firm were representing a party. This recusal was reinstated several times because Appointing Authority's conflict/recusal system occasionally failed with regard to recusals by WCJ and other workers' compensation judges at WCOA.

5

In response to the July 2018 complaint, Appointing Authority reviewed 6,000 of WCJ's emails dating back to 2010. The emails were captured from WCJ's Commonwealth email account.

On September 13, 2018, Counsel's Partner emailed the Judge Manager that WCJ made inappropriate and biased comments on and off the record during a September 11, 2018 hearing. The transcript of the September 11, 2018 hearing was reviewed as part of the investigation that resulted in WCJ's removal.

At 3:00 p.m. on September 20, 2018, WCJ was notified of a fact-finding meeting scheduled for the following morning in Harrisburg. R.R. at 1501a. On September 21, 2018, the meeting was conducted to provide WCJ with an opportunity to respond to the charges. During the meeting, WCJ was permitted to view the emails that were discussed and to take notes, but she was not permitted to retain copies of the emails. *Id.* at 49a-50a, 55a-56a, 588a. Following the meeting, on September 26, 2018, WCJ submitted a written statement addressing the charges. *Id.* at 1157a-1158a.

On October 1, 2018, Appointing Authority issued a removal letter charging WCJ with the following in violation of the Code, the Policy, the Directive, the IT Policy, and the Expectations: (1) sending emails and sharing information with an outside party who conducts business with the Commonwealth regarding workers' compensation cases; (2) engaging in *ex parte* communications; (3) using her Commonwealth email account to send and receive personal emails and purchase items; (4) using her email signature block when corresponding with outside parties; (5) making inappropriate and unprofessional remarks in emails; and (6) making inappropriate and concerning remarks on and off the record during a workers' compensation hearing.

WCJ appealed Appointing Authority's removal to the Commission, which held hearings to determine whether "just cause" existed for WCJ's removal. On November 21, 2019, the Commission sustained WCJ's appeal and concluded that Appointing Authority failed to present credible sufficient evidence that WCJ had violated any provision of the Code, the Policy, the Directive, the IT Directive, or the Expectations.

With respect to WCJ's purported violation of the Code of Ethics,[3] Appointing Authority argued that she violated its provisions because she: (1) had a

---

[3] Section 1404(a) of the Act states, in relevant part:

> (a) A workers' compensation judge shall conform to the following code of ethics:
>
> (1) Avoid impropriety and the appearance of impropriety in all activities.
>
> (2) Perform duties impartially and diligently.
>
> (3) Avoid ex parte communications in any contested, on-the-record matter pending before the department.
>
> (4) Abstain from expressing publicly, except in administrative disposition or adjudication, personal views on the merits of an adjudication pending before the department and require similar abstention on the part of department personnel subject to the workers' compensation judge's direction and control.
>
> (5) Require staff and personnel subject to the workers' compensation judge's direction and control to observe the standards of fidelity and diligence that apply to a workers' compensation judge.
>
> (6) Initiate appropriate disciplinary measures against department personnel subject to the workers' compensation judge's direction and control for unethical conduct.

**(Footnote continued on next page…)**

personal relationship with a lawyer who had appeared in front of her; (2) disclosed pre-decisional documents and internal communications; (3) used her Commonwealth email signature block on her emails; and (4) sought personal gain when communicating with outside entities. *See* R.R. at 564a-565a.

In rejecting these claims, the Commission determined that "there is no credible evidence that [WCJ's] personal romantic relationship with [a lawyer] affected her ability to perform her duties impartially or diligently, nor is there any evidence of impropriety." Commission Adjudication at 42. The Commission found that WCJ "credibly testified she was recused from hearing cases in which [the lawyer with whom she had a personal romantic relationship] or his firm represented a party since March 2015," *see* R.R. at 749a-750a, 892a, 903a, 970a, and, "[i]n fact, the evidence presented by [Appointing Authority] confirmed [WCJ] diligently prevented cases from mistakenly being assigned to her by emailing [the lawyer with whom she had a personal romantic relationship] to inform him when the recusal system failed. [*See* R.R. at 1201a, 1203a]." *Id.* at 42-43 (footnote omitted). The Commission rejected the assertion that these informational emails constituted improper *ex parte* communications, noting that they must relate to "any ***contested, on-the-record matter*** pending before the department," under Section 1404(a)(3),

---

(7)  Disqualify himself from proceedings in which impartiality may be reasonably questioned.

\* \* \*

(12) Conform to additional requirements as the secretary may prescribe.

(13) Uphold the integrity and independence of the workers' compensation system.

77 P.S. §2504(a)(1)-(7), (12), (13).

8

and that Appointing Authority did not prove that the communications related to any pending contested, on-the-record matter with the lawyer with whom she had a personal romantic relationship or his firm, but were merely a means by which she could take appropriate corrective action when the recusal system failed. *Id.* at 43 (emphasis in original). The Commission also determined that WCJ did not disclose pre-decisional documents or internal communications in violation of Section 1404(a)(4), noting that four of the emails do not contain any judges' personal views on the merits of a pending case and included case law that is public information. *Id.* at 44. Appointing Authority also failed to credibly establish that the one email that could arguably support the charge was actually sent.[4] *Id.* The Commission further found that "there is no credible evidence discernable in any of the emails produced by [Appointing Authority] that [WCJ] used her status . . . which created the appearance of impropriety or tarnished the integrity or independence of the workers' compensation system. *See* 77 P.S. §2504(a)(1)(13)." *Id.* at 44-45. Finally, the Commission rejected the assertion that an email sent to a car dealership expressing dissatisfaction with the service that WCJ received violated the Code noting that "[n]owhere in the text of the . . . email does [WCJ] indicate she intends to use her position as a means to obtain favorable treatment or some other personal gain from the dealership. [R.R. at 1173a]." *Id.* at 45. As a result, the Commission determined that WCJ did not violate the Code of Ethics.

---

[4] In this regard, the Commission repeatedly questioned the reliability of the Appointing Authority's capture of 6,000 of WCJ's emails. *See, e.g.*, Commission Adjudication at 45 n.25 ("This is another instance that calls into question the reliability of [Appointing Authority's] email capture of [WCJ's] email correspondence."); *id.* at 48 n.29 ("Initially, [Appointing Authority] claimed [WCJ] sent a different 'discourteous' email to the secretarial supervisor and presented the email to this effect. [R.R. at 294a-295a, 460a]. The [Human Resource] Delivery Center Director subsequently conceded this email was never sent. [*Id.* at 611a]. . . . [T]his is another example of the unreliability of the evidence presented by [Appointing Authority].").

With respect to the purported violations of the Performance Expectations,[5] the Commission concluded that "[t]here is no credible evidence that [WCJ] failed to perform her responsibilities in a timely manner, nor is there any credible evidence that she improperly handled correspondence." Commission Adjudication at 46. Additionally, "regarding the September 11, 2018 transcript, there is nothing in this transcript which could be categorized as discourteous conduct" because WCJ "is expected to keep the parties focused on the issues related to the case," and "[t]his is exactly what [WCJ] did during the September 11, 2018 hearing. [*See* R.R. at 1133a-1134a, 1221a-1261a]." *Id.* at 47. "Indeed, the Judge Manager indicated that it was not improper for [WCJ] to ask questions during the hearing," *see* R.R. at 321a, so that WCJ's "actions do not constitute discourteous conduct." *Id.* Likewise, the Commission rejected as not "discourteous" emails relied upon by Appointing Authority instructing a litigant not to email her in conformity with her published courtroom procedures; forwarding emails expressing "commonplace work frustrations, such as scheduling conflicts and an appeal" to her romantic partner; a discourteous email from another workers' compensation judge regarding a personal matter to which WCJ responded appropriately and for which

---

[5] As the Commission noted:

> Pursuant to the Performance Expectations, [WCJ] is expected to: (1) conduct hearings and conclude petitions in a timely fashion; (2) properly handle correspondence; (3) maintain control of the proceedings; and (4) display appropriate judicial demeanor and temperament. [R.R. at 1132a-1134a].

Commission Adjudication at 45-46 (footnote omitted). With respect to the "judicial demeanor and temperament" Performance Expectation, "[t]he measurement of this expectation require [WCJ] to: (1) provide parties with an opportunity to be heard and present testimony at hearings; and (2) display courtesy to all witnesses and counsel and treat parties with fairness and impartiality." *Id.* at 46 n.27.

10

the other judge was not disciplined; and an "unprofessional and ill-advised" email in which WCJ "jokes she will not be offering her services for voluntary mediations to [Counsel's law firm]" because "[Counsel's law firm] had already indicated it would never agree to use her as a voluntary mediator." Commission Adjudication at 48. As a result, the Commission determined that WCJ did not violate the Performance Expectations.

With respect to the purported violations of the Governor's Code of Conduct,[6] the Commission concluded:

> [Appointing Authority] did not present any credible evidence that [WCJ] misused non-public information for her own personal gain or for the gain of others. Likewise, there is no evidence that [WCJ] misused office facilities or equipment. Thus, there is no evidence to support [Appointing Authority's] claim that [WCJ] violated the Governor's Code of Conduct.

---

[6] Part I, Sections 4 and 5 of the Governor's Code of Conduct state:

> No employe, appointee or official in the Executive Branch of the Commonwealth shall:
>
> * * *
>
> 4. Misuse of information. For his or her own personal gain or for the gain of others, use of any information obtained as a result of service or employment with the Commonwealth and not available to the public at large or divulge such information in advance of the time prescribed for its authorized release.
>
> 5. Misuse of office facilities and equipment. Use any Commonwealth equipment, supplies or properties for his or her own private gain or for other than officially designated purposes.

R.R. at 1083a, 1084a.

Commission Adjudication at 49. As a result, the Commission determined that WCJ did not violate the Governor's Code of Conduct.

With respect to WCJ's purported violation of IT Policy,[7] Appointing Authority argued that WCJ violated the policy "in that she used her Commonwealth email to send personal emails to [a lawyer with whom she had a personal romantic relationship] and vendors. [R.R. at 559a-560a]." Commission Adjudication at 50. Specifically, Appointing Authority asserted that WCJ's personal emails were "prolific" and "did not constitute occasional, limited, and incidental personal use." R.R. at 560a. However, the Commission rejected this claim, noting that "[t]here is no evidence that [WCJ's] use of IT Resources interfered with the efficiency of operations," or "that it was in conflict with Commonwealth interests." Commission Adjudication at 50. The Commission "disagree[d] that a handful of personal emails over eight years can be considered 'prolific,'" and concluded "that the evidence presented is insufficient to establish a violation of an IT policy that explicitly permits

_____

[7] Section 5(h) of the IT Policy states:

> **h. IT Resources are intended for business use and should be used primarily for that purpose.** IT Resources are tools that the [C]ommonwealth has made available for [C]ommonwealth business purposes. Where personal use of IT Resources does not interfere with the efficiency of operations and is not otherwise in conflict with the interests of the [C]ommonwealth, reasonable use for personal purposes will be permitted in accordance with standards established for business use. Such personal use shall be limited, occasional, and incidental. Any personal use which is inconsistent with [C]ommonwealth policy regarding availability or capability of IT Resources, or inappropriate content of communications as defined by this policy is prohibited.

R.R. at 1106a.

12

occasional limited and incidental personal use." *Id.* As a result, the Commission determined that WCJ did not violate the IT Policy.

Finally, with respect to WCJ's purported violation of the Workplace Violence Policy,[8] Appointing Authority first relied on an April 23, 2018 email chain in which WCJ contacted an attorney regarding a brief that was due five months earlier and had yet to be filed. *See* R.R. at 1204a-1206a. The Commission noted that WCJ "pointed out to the attorney that the late brief was delaying the decision and 'not doing [his client] any justice,'" and that she "further instructed the attorney: 'File the brief. Even if you have to get it done over this weekend.' [R.R. at 1206a]." Commission Adjudication at 51. The Commission determined that "[t]his is not workplace violence" and that WCJ "is expected to maintain control of the proceedings and this is exactly what she was doing with this email." *Id.*[9] Regarding

---

[8] Section 4(i) and (j) of the Workplace Violence Policy states, in pertinent part:

> **i. Workplace Violence.** Violence that occurs at or is connected to the workplace, including any location if the violence has resulted from an act or a decision made during the course of conducting [C]ommonwealth business. Examples of workplace violence include but are not limited to: verbal and written threats, intimidation, stalking, harassment, [and] domestic violence. . . . Perpetrators of workplace violence can include employees, clients/customers, personal acquaintances/partners and strangers.

> **j. Zero Tolerance.** All reported incidents of workplace violence will be investigated. Appropriate action(s), up to and including termination of employment, and potential legal action, will be taken for all incidents where an investigation has determined that workplace violence has occurred.

R.R. at 1096a.

[9] In fact, the email chain in question ended with an email from the attorney to WCJ stating, in relevant part: "Wow! You're killing me with kindness, Your Honor. What incredibly beautiful **(Footnote continued on next page…)**

13

the remaining emails and the transcript of the September 11, 2018 hearing upon which Appointing Authority relied, the Commission found that "there is nothing . . . which would constitute workplace violence," and the Commission "reject[ed] [Appointing Authority's] assertion that [WCJ] has a reputation of being intimidating because she jokingly called herself 'the Wicked Witch of the West' in the April 25, 2016 email to her romantic partner. [R.R. at 607a-608a, 1290a]." Commission Adjudication at 52. The Commission found that WCJ referred to herself in a joking manner because she took a harsher stance on a legal issue than her romantic partner, which position was subsequently vindicated by this Court in our opinion in *Quality Bicycle Products, Inc. v. Workers' Compensation Appeal Board (Shaw)*, 139 A.3d 266 (Pa. Cmwlth. 2016). *Id.* The Commission concluded: "This is in no way workplace violence, nor is this lone email, which was sent two years prior to [WCJ's] removal, sufficient to establish that [WCJ] had a reputation of being intimidating." *Id.*

> Ultimately, the Commission determined:

> In summation, based on the above, the Commission finds [Appointing Authority] has not met its burden of presenting sufficient evidence to support any of its charges, either individually or collectively.[10] There is no

---

thoughts you've conveyed. I'm printing and keeping it among my file of treasured written communication." R.R. at 1204a.

[10] Former Section 807 of the Civil Service Act states that "[n]o regular employe in the classified service shall be removed except for just cause." *Formerly* 71 P.S. §741.807. Although the Civil Service Act did not define "just cause," this Court has stated that "just cause for removal is largely a matter of discretion on the part of the head of the department." *Perry v. State Civil Service Commission (Department of Labor and Industry)*, 38 A.3d 942, 951 (Pa. Cmwlth. 2011). However, this discretion is qualified in that "just cause must be merit-related and the criteria must touch upon [the employee's] competency and ability in some rational and logical manner." *Wei v. State Civil Service Commission (Department of Health)*, 961 A.2d 254, 258 (Pa. Cmwlth. 2008)
**(Footnote continued on next page…)**

> credible evidence or testimony establishing that the emails or September 11, 2018 transcript rationally and logically touch upon [WCJ's] competency and ability to perform her job duties. Furthermore, there is no credible evidence that [WCJ] is unfit to be in the position. The Judge Manager who supervised [WCJ] observed her at hearings and noted on [WCJ's performance review] that she exhibits appropriate judicial demeanor and conducts her courtroom professionally. [R.R. at 661a, 1409a].

Commission Adjudication at 52-53 (citations omitted). As a result, the Commission concluded, "[Appointing Authority] has failed to present evidence establishing just cause for removal under Section 807 of the Civil Service Act." *Id.* at 53.

Accordingly, the Commission issued the instant order sustaining WCJ's appeal, and directing that WCJ's removal by Appointing Authority be expunged, and that she be returned to her regular employment with reimbursement of wages and emoluments lost from the date of her removal, less wages earned and public benefits received. Commission Adjudication at 53-54. Appointing Authority then filed this appeal.[11, 12]

---

(citation omitted). Thus, to be sufficient, just cause "should be personal to the employee" and render her unfit for her job, "making dismissal justifiable and for the good of the service." *Perry*, 38 A.3d at 951. It is well-settled that the appointing authority bears the burden of proving just cause and the substance of the charges underlying an employee's removal. *Department of Transportation v. State Civil Service Commission (Bocchinfuso)*, 84 A.3d 779, 783 n.1 (Pa. Cmwlth. 2014).

[11] This Court's review of the Commission's Adjudication and Order is limited to determining whether the Commission's findings are supported by substantial evidence, whether the Commission erred as a matter of law, or whether it violated constitutional rights. *Perry*, 38 A.3d at 947 n.3. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bowman v. Department of Environmental Resources*, 700 A.2d 427, 428 n.4 (Pa. 1997).

[12] By a February 18, 2020 Memorandum and Order, we denied Appointing Authority's request for a stay of the Commission's Adjudication and Order.

On appeal, Appointing Authority claims that "[t]he Commission erred when it overturned [Appointing Authority's] decision to remove [WCJ] from her WC Judge position because competent record evidence accepted by the Commission demonstrated [WCJ] violated the statutory Code of Ethics for WC Judges, as well as other Commonwealth standards of conduct." Brief of Petitioner at 20. Appointing Authority then outlines in detail the "uncontroverted" evidence that the Commission admitted into the record, but then either discredited it or weighed it differently than Appointing Authority. Appointing Authority suggests that this evidence should have been viewed to support the charges underlying WCJ's dismissal. *Id.* at 20-40.

> However, as this Court has explained:

> [Q]uestions of credibility and the weight to be accorded evidence are determined by the Commission, and this Court will not re-weigh the evidence or substitute its judgment even though it might have reached a different factual conclusion. *Thompson v. State Civil Service Commission (Beaver County Area Agency on Aging)*, 863 A.2d 180, 184 (Pa. Cmwlth. 2004)[.] Thus, this Court must accept the Commission's findings if they are supported by substantial evidence. *Daily v. State Civil Service Commission (Northampton County Area Agency on Aging)*, 30 A.3d 1235, 1239-40 (Pa. Cmwlth. 2011)[.] As fact finder, the Commission is free to reject uncontradicted evidence as not credible. *See Adonizio Brothers, Inc. v. Department of Transportation Board of Review*, 529 A.2d 59, 61 (Pa. Cmwlth. 1987) [] citing *Williams v. State Civil Service Commission*, 306 A.2d 419 (Pa. Cmwlth. 1973). On appeal, the prevailing party before the Commission is entitled to every inference that can be logically and reasonably drawn from the evidence viewed in a light most favorable to that party. *Western Center, Department of Public Welfare v. Hoon*, 598 A.2d 1042, 1045 (Pa. Cmwlth. 1991).

16

*Housing Authority of the County of Butler v. State Civil Service Commission* (Pa. Cmwlth., No. 137 C.D. 2013, filed August 27, 2013), slip op. at 8 n.9.[13]

As outlined above, the Commission thoroughly and extensively reviewed all of the evidence presented by Appointing Authority to support WCJ's dismissal, and specifically addressed its credibility and weight of the evidence determinations with respect to that which was presented. We simply will not accede to Appointing Authority's request to revisit the Commission's evidentiary determinations with respect to the purportedly "uncontroverted" evidence admitted into evidence, as such considerations are patently beyond this Court's scope of appellate review. *Id.*[14]

---

[13] *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a) ("Parties may also cite an unreported panel decision of this court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

[14] Importantly, in this regard, Appointing Authority does not assert that the Commission capriciously disregarded competent evidence. As this Court has observed:

> We note that "the capricious disregard standard of review," previously applicable where only the party with the burden of proof presented evidence and did not prevail before the administrative agency, is now "an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, [812 A.2d 478, 487 (Pa. 2002)]. Employer in this matter does not argue that the WCJ capriciously disregarded competent evidence in the record. The capricious disregard standard under *Wintermyer* is therefore inapplicable to this matter.

*Sun Home Health Visiting Nurses v. Workers' Compensation Appeal Board (Noguchi)*, 815 A.2d 1156, 1159 n.3 (Pa. Cmwlth. 2003).

17

Accordingly, the Commission's Adjudication and Order is affirmed.


                                        _____

                                        MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Labor and Industry, :
Workers' Compensation Office of :
Adjudication, :
                 :
            Petitioner :
                 :
          v. : No. 1768 C.D. 2019
                 :
State Civil Service Commission :
(McCormick), :
                 :
         Respondent :

# **O R D E R**

AND NOW, this 8th day of July, 2021, the order of the State Civil Service Commission dated November 21, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,   :
Department of Labor and Industry,  :
Workers' Compensation Office of  :
Adjudication,  :
                  Petitioner  :
  :
      v.              :  No. 1768 C.D. 2019
  :  ARGUED:  December 8, 2020
State Civil Service Commission  :
(McCormick),  :
                  Respondent  :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

DISSENTING OPINION
BY JUDGE CEISLER                           FILED:  July 8, 2021

I respectfully dissent.  I would conclude that the Department of Labor and Industry, Workers' Compensation Office of Adjudication (Department), presented substantial, credible evidence establishing just cause for its removal of Andrea McCormick from her position as a workers' compensation judge (WCJ).  The record clearly established that Judge McCormick committed numerous violations of the Code of Ethics for WCJs set forth in Section 1404(a) of the Workers' Compensation Act (Act), 77 P.S. § 2504(a),[1] as well as other standards of conduct for Commonwealth employees.  Therefore, I would reverse the Adjudication of the State Civil Service Commission (Commission).

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350.

Section 1404(a) of the Act explicitly provides that a WCJ "*shall*," among other things, "[a]void impropriety and the appearance of impropriety in all activities," "[a]bstain from expressing publicly, except in administrative disposition or adjudication, personal views on the merits of an adjudication pending before the [D]epartment," and "[u]phold the integrity and independence of the workers' compensation system." 77 P.S. § 2504(a)(1), (4), and (13) (emphasis added). Section 1404(b) of the Act mandates the removal from office of any WCJ who violates these prohibitions. *See* 77 P.S. § 2504(b) ("Any [WCJ] who violates the provisions of clause (a) *shall be removed from office . . . .*") (emphasis added).

In this case, the record shows that Judge McCormick violated the Code of Ethics in copious email communications with her paramour, a workers' compensation attorney (Attorney), over the course of several years.

During its investigation into the matter, the Department discovered that Judge McCormick had, on numerous occasions, disclosed to Attorney internal work-related communications. As outlined in the Department's termination letter, Judge McCormick's emails to Attorney contained information regarding: internal office matters; personal information about individual claimants and details regarding their workers' compensation cases; decisions that Judge McCormick had written on cases that were not yet released for publication; emails between Judge McCormick and her colleagues discussing and analyzing workers' compensation case law; and emails from other attorneys, outside of Attorney's law firm, about workers' compensation cases before her. Reproduced Record (R.R.) at 1063a-64a.[2] The

---

[2] In one particularly disconcerting instance, Judge McCormick forwarded to Attorney a lengthy email from another attorney that contained very personal details about his family's recent health struggles. *See* R.R. at 1204a-06a. The attorney had offered the information to Judge McCormick to explain why he was late filing a brief and told her that he "generally [does not] **(Footnote continued on next page…)**

Department noted that "[d]uring a factfinding meeting to discuss these infractions, [Judge McCormick was] unable to provide an acceptable explanation for [her] behavior." *Id.* at 1064a.

While the Civil Service Act[3] does not define "just cause," our Court has stated that "just cause for removal is largely a matter of discretion on the part of the head of the [D]epartment." *Perry v. State Civ. Serv. Comm'n (Dep't of Lab. & Indus.)*, 38 A.3d 942, 951 (Pa. Cmwlth. 2011). "Even a single instance of misconduct or an error of judgment can constitute just cause for dismissal if it adversely reflects on the fitness of a person for his [or her] duties." *Davis v. Civ. Serv. Comm'n of Phila.*, 820 A.2d 874, 878 (Pa. Cmwlth. 2003). However, "just cause must be merit-related and the criteria must touch upon [the employee's] competency and ability in some rational and logical manner." *Wei v. State Civ. Serv. Comm'n (Dep't of Health)*, 961 A.2d 254, 258 (Pa. Cmwlth. 2008). To justify an employee's removal, "the cause should be personal to the employee and such as to render the employee unfit for his or her position, thus making dismissal justifiable and for the good of the service." *Perry*, 38 A.3d at 951 (citation omitted).

In my view, Judge McCormick's conduct of forwarding internal, confidential communications to Attorney, who regularly appeared before the WCJs whose discussions she shared, not only violated the Code of Ethics, but it clearly demonstrated that she is unfit to serve as a WCJ. Inexplicably, the Commission found no ethical violation because "none of these emails contain[ed] [Judge

---

disclose to clients (colleagues or judges) this kind and amount of personal information unless, as here, it's necessary." *Id.* at 1205a.

[3] Act of August 5, 1941, P.L. 542, *as amended*, *formerly* 71 P.S. §§ 741.1 - 741.1005, repealed and replaced by Section 2 of the Act of June 28, 2018, P.L. 460, No. 71, effective March 28, 2019, 71 Pa. C.S. §§ 2101-3304.

McCormick's] or any other judges' personal views on the merits of an adjudication pending before the [D]epartment" and "the case[]law mentioned in these emails [was] public information." Comm'n Adjudication at 44 n.24. Throughout its Adjudication, the Commission also repeatedly found that the challenged emails did not contain confidential or proprietary information. *See id.* at 30-31, 33.

Notably, the Department entered into evidence a December 27, 2017 email chain in which other WCJs in Judge McCormick's office discovered that someone had forwarded an internal email discussion to an outside party. Comm'n Adjudication at 34. The WCJs involved in the email chain were "upset and saddened" by the disclosure, expressed "outrage," and opined that, regardless of who forwarded the email, the disclosure was "an egregious lack of discretion" and a "breach of confidence." R.R. at 1182a-83a. One WCJ even remarked to his colleagues that "*what [the WCJs] say about cases and issues needs to be kept confidential*" and proposed that the WCJs discuss "what [they] collectively can do *to maintain the integrity and professionalism of our group in light of this breach*." *Id.* at 1182a (emphasis added). While the record does not establish who forwarded the offending email, Comm'n Adjudication at 34, this evidence demonstrates that the WCJs in Judge McCormick's office expected that all of their internal office communications would be kept confidential and would not be disseminated to others.

Moreover, some of the emails Judge McCormick forwarded to Attorney conspicuously contained the word "Confidential" in the subject line, and one document she forwarded to him stated, "This is an internal document not approved for distribution outside of the Department of L[abor] & I[ndustry]." R.R. at 1171a-

72a, 1185a. This evidence contradicts the Commission's determination that the emails did not contain any confidential information.

I am also troubled by the Commission's finding that Judge McCormick did not improperly disclose pre-decisional documents to Attorney. The Commission determined that the Department failed to prove that the single email that "arguably established [Judge McCormick] publicly expressed her personal views on the merits of a pending adjudication" was actually sent to Attorney. Comm'n Adjudication at 44. The email in question, dated December 6, 2016, included "first draft" in the subject line and attached an unpublished draft decision and an unsigned order in a workers' compensation case involving the Philadelphia Eagles. R.R. at 1159a-61a.[4] By order dated April 25, 2019, the Commission admitted this email into evidence, over Judge McCormick's objection, specifically finding that "*there [was] testimony in the record that the email was actually sent*." *Id.* at 1485a-86a (emphasis added). In its subsequent Adjudication, however, the Commission reversed this ruling, finding that there was "no credible evidence that confirmed" that Judge McCormick actually sent the email. Comm'n Adjudication at 44. The Commission then stated: "[T]here was another email the [Department] captured and presented in support of its charges, but later acknowledged was not sent. Thus, the Commission does not find credible the [Department's] claim [that] this email [attaching the pre-decisional document] was sent simply because it was captured by [its] search." *Id.* (internal citations omitted). I find this explanation woefully lacking.

Judge McCormick's objection to the email was fully litigated before the Commission in April 2019, and the Commission expressly admitted it, finding credible evidence that the email was sent. R.R. at 1485a-86a. Judge McCormick

_____

[4] The final decision was not circulated until December 8, 2016. R.R. at 1162a-66a.

EC - 5

did not deny sending the email, testifying only that she "was not sure" if she sent it. Comm'n Adjudication at 29 n.12. Judge McCormick also testified that she and Attorney were preparing for a workers' compensation conference six months later and that "the decision attached to the December 6, 2016 email was a penalties decision outlining factors that she intended to discuss at the conference." *Id.* Evidence that Judge McCormick forwarded a draft decision to Attorney would alone establish her violation of the Code of Ethics, thereby mandating her removal. *See* 77 P.S. § 2504(a)(4); Comm'n Adjudication at 44. By simply reversing its prior ruling in its written decision, the Commission was able to disregard this critical piece of evidence. I agree with the Department that the Commission abused its discretion in refusing to consider this evidence.

I recognize, as the Majority points out, that questions regarding the credibility of witnesses and weight of the evidence are within the sole province of the Commission as factfinder. The record in this case is replete with examples of Judge McCormick's unethical behavior, yet the Commission overlooked much of this evidence, in part because there was "no credible evidence that [Judge McCormick's] relationship with [Attorney] affected her ability to perform her duties impartially or diligently." Comm'n Adjudication at 42. The Commission also found no "impropriety" because there was no evidence that Judge McCormick decided any cases involving [Attorney's] firm after they became romantically involved. *Id.* at 42-43. These findings, however, are irrelevant to the question of whether Judge McCormick "[a]void[ed] . . . *the appearance of impropriety in all activities*" as required by the Code of Ethics. 77 P.S. § 2504(a)(1) (emphasis added).

I believe the uncontroverted evidence established that Judge McCormick failed to avoid the appearance of impropriety by intentionally sharing with Attorney

internal communications and documents exchanged privately between the WCJs in her office, as well as her private communications with other attorneys appearing before her. As the Department cogently asserts in its brief:

> As a [WCJ] in a sensitive position and entrusted with upholding the integrity of the workers' compensation system, [Judge] McCormick's actions of giving [Attorney] special access and insight to the inner[]workings and privileged communications of the Philadelphia Office of Adjudication, and the Commonwealth's bench of [WCJs], was inappropriate and, at the very least, gave the appearance of wrongdoing to the public.

Dep't Br. at 33; *see Dep't of Corr. v. Roche*, 654 A.2d 64, 69 (Pa. Cmwlth. 1995). ("The *appearance of wrongdoing by an employee in a sensitive position* reflects unsatisfactorily on the employee's ability to perform his [or her] duties and *supports his [or her] dismissal for just cause*.") (emphasis added).

By repeatedly and knowingly divulging confidential information to Attorney, Judge McCormick not only conveyed the appearance of impropriety, she also failed to "uphold the integrity and independence of the workers' compensation system." 77 P.S. § 2504(a)(13). I believe Judge McCormick's inappropriate behavior rationally and logically impacted her competency and ability to perform her job duties and demonstrated that she is unfit to serve as a WCJ. *See Wei*, 961 A.2d at 258. Based on the substantial evidence of record, I would conclude that the Department established just cause for her removal and, therefore, the Commission erred in reinstating her to her position as a WCJ.

For these reasons, I would reverse the Commission's Adjudication.

_____
ELLEN CEISLER, Judge